OPINION HEADING PER CUR 




 NO. 12-02-00309-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS



WILLIAM L. DIXON, SR. AND GEORGIA G. DIXON, 

INDIVIDUALLY AND AS TRUSTEES FOR 

WM. LESTER DIXON, JR., TRUST, 

WELDON RUSSELL MACKEY TRUST,

ELDON RAY MACKEY TRUST, BYRON

MACKEY TRUST, TARA MACKEY TRUST,
§
 APPEAL FROM THE 115TH

BRIAN MACKEY TRUST, TAMI REDMON

TRUST, HEATHER DIXON TRUST, FREEDOM

SHAW TRUST, LEAH MACKEY TRUST, 

KEVIN MACKEY TRUST, CAYANNE DIXON

TRUST, AND A.W. WITCHER AND 

BETTY L. WITCHER,

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


AMOCO PRODUCTION, 

COMPANY, ET AL.,
§
 UPSHUR COUNTY, TEXAS

APPELLEES





OPINION


 Appellants William L. Dixon, Sr., his wife Georgia S. Dixon, A. W. Witcher, and his wife
Betty L. Witcher bring this interlocutory appeal from the trial court's partial judgment that the
property description in a gas unit designation ("Unit Designation") filed by Amoco Production
Company ("Amoco") is legally sufficient to satisfy the statute of frauds. (1) They contend in two
issues that the legal description in the Unit Designation is insufficient to satisfy the statute of frauds
and that the Unit Designation is therefore void. We affirm.

 


Background


 On July 15, 1993, William L. Dixon, Sr. and Georgia S. Dixon (collectively "Dixon")
executed an oil, gas, and mineral lease (the "Dixon Lease") to Amoco as lessee. The Dixon Lease
stated, "Lessee [Amoco] is granted the right and power to pool all or any part of the leased premises
with any other lands, as to any stratum or strata and as to any mineral or minerals, and as to all or
any interests therein, and by whomsoever owned, for development and operation of the same as a
unit or units." Less than a month later, A. W. Witcher and Betty L. Witcher (collectively "Witcher")
executed an oil, gas, and mineral lease (the "Witcher Lease") with the same pooling clause, which
was subsequently assigned to Amoco. Both leases also stated that the designation of a pooled unit
would be effective when filed in the appropriate records of the county in which the leased premises
are situated. Both the Dixon Lease and the Witcher Lease were for a three-year term and described
lands located in Upshur County.

 Amoco eventually controlled leases covering over 1,500 acres of land, including the Dixon
and Witcher Leases. In July of 1995, Amoco drilled a producing gas well on Dixon's land. On
August 10, 1995, Amoco filed the Unit Designation. Attached to the Unit Designation were two
exhibits. The first exhibit contained a list of forty-four leases controlled by Amoco, which described
over 1,500 acres of land ("Unit Designation List of Leases"), and included the recording information
for each lease from the Official Records of Upshur County. The second exhibit was a Tobin Map,
which was marked with a bold outline encircling eleven tracts that were to be part of the pooled 645-acre unit ("Unit Designation Map"). Almost a year later, on August 1, 1996, Amoco filed a First
Amendment to Designation ("Amended Unit Designation"). This Amended Unit Designation
contained a metes and bounds description of the perimeter of the area encircled on the Unit
Designation Map attached to the Unit Designation filed a year earlier. After the Amended Unit
Designation was filed, two other producing wells were drilled on the Dixon Unit.

 On July 15, 1999, Dixon and Witcher filed suit seeking a declaratory judgment that the Unit
Designation was void because it did not contain a sufficient legal description of the 645 acres. 
Because the Unit Designation was void, Dixon and Witcher contended, (1) the Dixon Lease expired
as to lands within the unit, (2) the Witcher Lease expired, and (3) to the extent any producing well
was located on lands covered by either lease, the lessors named in the lease were entitled to a full
royalty. In July of 2002, the trial court conducted a separate trial on the sole issue of whether the
property description in the Unit Designation was legally sufficient. 

 On October 21, 2002, the trial court entered a partial judgment on this issue declaring that
the property description in the Unit Designation was legally sufficient to describe the pooled gas
unit. The partial judgment also included an order for an interlocutory appeal under Section
51.014(d) of the Texas Civil Practice and Remedies Code. Dixon and Witcher then filed this
interlocutory appeal. In their first and controlling issue, Dixon and Witcher contend that neither the
Unit Designation List of Leases nor the Unit Designation Map attached to the Unit Designation
constitutes a sufficient legal description. 


Standard of Review and Sufficiency of Legal Description


 The sufficiency of the legal description in any instrument transferring a property interest is
a question of law. See Haines v. McLean, 154 Tex. 272, 280, 276 S.W.2d 777, 781-82 (1955). A
question of law is subject to a de novo review. See In re Humphreys, 880 S.W.2d 402, 404 (Tex.
1994). 

 The statute of frauds requires that all conveyances of real property be in writing and signed
by the party to be charged. See Tex. Bus. & Com. Code Ann. § 26.01(b)(4) (Vernon 2002). An
instrument conveying land must contain a sufficient legal description or the instrument is void under
the statute of frauds. See Greer v. Greer, 144 Tex. 528, 530, 191 S.W.2d 848, 849 (1946). For a
legal description to be sufficient, the writing must furnish within itself or by reference to some other
existing writing, the means or data by which the land to be conveyed may be identified with
reasonable certainty. Morrow v. Shotwell, 477 S.W.2d 538, 539 (Tex. 1972). If enough information
appears in the description so that a party familiar with the locality can identify the premises with
reasonable certainty, the description will be legally sufficient. See Gates v. Asher, 154 Tex. 538,
541, 280 S.W.2d 247, 248-49 (1955).

 Dixon and Witcher contend that, standing alone, neither the Unit Designation List of Leases
nor the Unit Designation Map provides a legally sufficient description for the Unit Designation. 
Amoco responds that the Unit Designation List of Leases and the Unit Designation Map should be
considered together in determining whether there is a sufficient legal description for the Unit
Designation. We agree with Amoco.

 A legal instrument conveying land must be examined in its entirety in order to determine if
there is a sufficient legal description to satisfy the statute of frauds and therefore transfer an interest
in real property. See Lobit v. Crouch, 293 S.W.2d 110, 113 (Tex. Civ. App.-Austin 1956, writ ref'd 
n.r.e.). Additionally, it is a well settled rule of law that in the construction of written instruments,
all instruments in a chain of title, when referred to in a deed (or any instrument conveying an interest
in real property), will be read into it. Harris v. Windsor, 279 S.W.2d 648, 649 (Tex. Civ.
App.-Texarkana 1955), aff'd, 156 Tex. 324, 249 S.W.2d 798 (1956). Here, a licensed Texas
surveyor, Brian Autio ("Autio"), testified on behalf of Amoco that based solely on the Unit
Designation List of Leases and Unit Designation Map contained in the Unit Designation, he was able
to identify and locate each tract comprising the area encircled on the Unit Designation Map. Autio
stated that he obtained copies of the forty-four leases described in the Unit Designation List of
Leases and began gathering information from the deeds referenced in the leases. He testified that
with this information, he was able to first plot and then sketch each tract included in the larger tract
depicted on the Unit Designation Map. He was then able to determine not only which lease tracts 
fell within the outlined area of the Unit Designation Map, but also which of those tracts' boundaries
the outline directly followed. Autio testified that Amoco was able to perform an on-the-ground
survey of the lands contained in the unit utilizing the reference information and to prepare a metes
and bounds description from that survey.

 During his testimony, Autio was able to take the eleven tracts shown on the Unit Designation
Map and compare them with the eleven tracts within the Dixon Unit as described by the metes and
bounds description prepared from his surveys. To the naked eye, the shapes of the tracts in each of
the eleven comparisons appear to be similar. The surveyor for Dixon and Witcher agreed that the
metes and bounds description contained in the Amended Unit Designation was a sufficient legal
description. Moreover, he did not dispute Amoco's evidence that the metes and bounds description
essentially matched the tracts shown on the Unit Designation Map. The unrebutted testimony of a
surveyor witness such as Autio showing that an interest in real property can be identified with
reasonable certainty is enough evidence for a trial court to determine that a legal description is
sufficient. See Gates, 280 S.W.2d at 249. A reasonable certainty is all that the law requires. Id. 
Conviction beyond all peradventure of doubt is unnecessary. Id.

 In support of their contention that the legal description in the Unit Designation was
insufficient, Dixon and Witcher cite thirteen cases. However, the cases cited involve generalized
descriptions that do not refer to recorded instruments or do not show the specific location of the land
sought to be conveyed. None of these fact situations exist in the instant case because of the
references to instruments in the Official Records of Upshur County and the specificity of the
information on the Tobin Map. The record here shows that the references in the leases led to other
writings in the Official Records of Upshur County (or previous land records) that helped to identify
on the ground the location of each tract on the Tobin Map. The Tobin Map includes names of
surveys, general land office abstract numbers, names of owners in the chain of title, acreage amounts
in each tract, survey lines for each tract, the lessors of oil, gas, and mineral leases covering each tract,
and well sites. Further, Tobin Maps are prepared using aerial photography to eliminate errors in their
plotting. They are recognized as the standard for map making in the oil and gas industry. The
combination of the instruments throughout the chain of title for each of the forty-four leases
identified by volume and page number in the Official Records and the detail of the Tobin Map is
enough to provide a sufficient legal description for the Unit Designation. We therefore determine
that the cases cited by Dixon and Witcher are inapposite.

 Further, Dixon and Witcher contend that there are defects in various instruments throughout
the chain of title involving survey calls, boundary markers, and boundary lines that invalidated the
legal description in the Unit Designation. Dixon and Witcher contend that these defects created gaps
between various tracts shown in the Unit Designation. Amoco contends that errors, mistakes,
inconsistencies, and omissions in the legal descriptions of the instruments in the chain of title did
not invalidate the legal description in the Unit Designation. When there are mistakes or
discrepancies in instruments in a chain of title, a court must, if practical, correct errors to give legal
effect to later instruments conveying an interest in the subject real property. See Howland v. Hough,
570 S.W.2d 876, 882 (Tex. 1978). Again, a reasonable certainty is all the law requires. Gates, 280
S.W.2d at 249. The testimony of Amoco's witnesses explained how these alleged discrepancies
could be corrected. The surveyor who testified on behalf of Dixon and Witcher did not rebut
Amoco's evidence on these corrections. Consequently, there was sufficient evidence in the record
for the trial court to give effect to the legal description in the Unit Designation. We therefore hold
that the legal description contained in the Unit Designation is sufficient to satisfy the statute of
frauds. Dixon and Witcher's first issue is overruled. 

 We do not reach the Dixon and Witcher's second issue regarding the defect of the Amended
Unit Designation since the issue was contingent upon our sustaining their first issue. See Tex. R.
App. P. 47.1.

Conclusion


 Having overruled Dixon and Witcher's first issue and having concluded that we need not
address their second issue, the judgment of the trial court is affirmed.


 JAMES T. WORTHEN 

 Chief Justice

Opinion delivered January 30, 2004.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.













(PUBLISH)
1. This appeal was filed pursuant to section 51.014(d)-(f) of the Texas Civil Practice and Remedies Code.