Opinion issued on May 5, 2005













                    
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00158-CV
__________
 
CENTERPOINT ENERGY HOUSTON ELECTRIC, L.L.P., Appellant
 
V.
 
THE OLD TJC COMPANY, Appellee
 

 
 
On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 94,170-A
 

 
 
O P I N I O N
          This appeal arises out of a dispute regarding the ownership of a landlocked
60.724-acre tract of undeveloped land located in the Brazos River flood way in
southeastern Fort Bend County, Texas. Appellant, CenterPoint Energy Houston
Electric, LLC, as successor to Reliant Energy, Incorporated, formerly Houston
Lighting & Power Company (“HL&P”), appeals the Agreed Final Judgment Nunc Pro
Tunc, in which the trial court denied HL&P’s motion for summary judgment seeking
fee simple title to the property and granted the motion for summary judgment filed
by the appellee, the Old TJC Company, formerly The Johnson Company (“the Old
TJC”). In six issues, HL&P contends that the trial court erred (1) in holding that, six
years after the Deed was drafted, the Old TJC still owned an interest in the property;
(2) in implicitly holding that the interest that the Old TJC reserved in the Special
Warranty Deed was a conditional limitation and not a condition subsequent; (3) in
holding that the “mere conveyance” of the property to HL& P triggered the Old TJC’s
claimed interest in the property; (4) in holding that the property “automatically” and
immediately reverted to the Old TJC; (5) in denying HL&P’s motion for summary
judgment; and (6) in granting the Old TJC’s cross-motion for summary judgment. 
We reverse and render. 
Background
          On April 21, 1986, the Old TJC executed a Special Warranty Deed (“Original
Deed”) in which it “GRANTED, SOLD, and CONVEYED” 60.724 acres of land to
Fort Bend County. The deed contained the following restriction:
It is expressly provided, agreed and understood that the herein described
and conveyed property shall be used exclusively by [Fort Bend County]
for purposes of operating and maintaining the same as a public park for
recreational purposes only, and in the event that [Fort Bend County]
should for any reason fail or cease to use the herein described property
as a public park for more than ninety (90) days, then title to the herein
described property shall, on the ninety-first (91st) day following such
cessation or abandonment of use, revert to and become the property of
[the Old TJC], its successors or assigns, and [Fort Bend County] agrees
to execute such deeds or other instruments as may be necessary or
appropriate to evidence such reversion of title and to convey the
property herein described to [the Old TJC], its successors or assigns.
 
The restriction on the use of the herein described property as a public
park, and the provisions hereof relating to the automatic reversion of
title to [the Old TJC] shall remain in full force and effect from the date
of execution hereof until the date that is twenty one (21) years after the
death of all of the now living decendants [sic] of Ronald Reagan, the
president of the United States.
 
(Emphasis added.) Following the execution of this deed, the Old TJC retained only
a reversionary interest in the subject property.
          On June 25, 1990, the Old TJC and Fort Bend County executed a “Correction
Deed.” In its recitals, the Correction Deed referenced the Original Deed and set forth
the metes and bounds description of the property, but it did not reference the use
restriction contained in the Original Deed. The Correction Deed stated in pertinent
part that:
WHEREAS, by deed dated April 21, 1986, (Original Deed), which
appears of record under County Clerk File No. 8667669 in the deed
records of Fort Bend County, Texas, THE JOHNSON CORPORATION,
a Texas corporation, (“Grantor”), GRANTED, SOLD and CONVEYED
unto FORT BEND COUNTY, TEXAS, a political subdivision of the
State of Texas (“Grantee”) all of Grantor’s rights, title and interest in
and to that certain tract of land therein described as follows, . . . .

The Correction Deed also noted that the metes and bounds description contained in
the Original Deed was incorrect and that the parties desired to correct this in the
Correction Deed. 
WHEREAS, said property description contained in the original deed is
incorrect in that the fifth paragraph recites, “THENCE NORTH 86
DEGREES 08 MINUTES, 59 SECOND . . .” and in that said fifth
paragraph should recite, “THENCE SOUTH 86 DEGREES 08
MINUTES, 59 SECONDS . . . .”; and, 
 
WHEREAS, Grantor and Grantee desire to correct the property
description contained in the Original Deed so that the public records will
show that FORT BEND COUNTY’S rights in and to the deeded lands
were intended to be, and are in and to the tract of land hereinafter
correctly described; . . . .

The Correction Deed proceeded to grant all of the Old TJC’s rights, title and interest
in the property to Fort Bend County. 
KNOW ALL MEN BY THESE PRESENTS:
That THE JOHNSON CORPORATION, a Texas corporation
(“Grantor”) for and in the consideration of TEN AND NO/100
DOLLARS ($10.00) and other good and valuable consideration, the
sufficiency of which is hereby acknowledged and confessed have
GRANTED, SOLD AND CONVEYED, and by these presents do
GRANT, SELL and CONVEY unto FORT BEND COUNTY, TEXAS,
a political subdivision of the State of Texas (“Grantee”), all of Grantor’s
rights, title, interest, claim and demand in and to that certain tract of land
situated in said County of Fort Bend and described as follows: . . . . 

The Correction Deed also contained an habendum clause, which stated:
 
TO HAVE AND TO HOLD the above described rights, title, interest,
claim, and demand, to the said GRANTEE [Fort Bend County], its heirs
and assigns forever, so that neither the GRANTOR [the Old TJC], its
legal representatives or assigns shall have any right or title to or interest
in such property, premises, or appurtenances, or any part thereof, at any
time hereafter.

The Correction Deed was “EXECUTED, ACCEPTED AND EFFECTIVE for all 

purposes as of April 21, 1986 . . . .” 

          On February 12, 1996, HL&P sued Fort Bend County and the Old TJC in an
attempt to seek “declaration of the property interests” owned by the County and the
Old TJC resulting from the 1986 and 1990 deeds. It also attempted to establish a
“claim of a property interest as to a portion of the land in controversy and for
condemnation thereof in favor of HL&P.” In its petition, HL&P explained that it was
in the process of establishing a railway or railroad spur terminating at one of its
electric generation plants in Fort Bend County. In connection with the rail spur
project, HL&P determined that it was necessary to excavate soil and clay from areas
near to the rail spur easement in order to construct the railroad. The property that was
the subject of the Original and Correction Deeds was ideally suited for the excavation
project.
          In response, among other things, the Old TJC filed a plea to the jurisdiction in
which it asserted that, because HL&P had no ownership interest in the property, the
case should be dismissed. Subject to its other pleadings, the Old TJC filed 
counterclaims seeking, among other things, declaratory relief determining ownership
of the property. 
          The next week, HL&P nonsuited all of its “claims stated in its Original
Petition.” On the same day, HL&P bought the property from Fort Bend County.



After it purchased the property from Fort Bend County, HL&P filed a new petition
that, among other things, responded to the Old TJC’s jurisdictional challenge. Both
parties filed competing motions for summary judgment. 
          In an Agreed Final Judgment Nunc Pro Tunc,


 the trial court determined that,
“as of April 12, 1996, Old TJC owned a reversionary interest in the 60.724-acre tract
. . . . The Court also determined that Old TJC’s reversionary interest was triggered
by Fort Bend County on April 12, 1996, thereby causing title to the 60.724-acre tract
to revert automatically to Old TJC on that date.” The claims regarding the title to the
property were severed, and the order was made final and appealable. 
Summary Judgment Standard of Review
           In a traditional summary judgment, the movant bears the burden of proof, and
all doubts concerning the existence of a genuine issue of fact must be resolved against
the movant. Tex. R. CIV. P. 166a(c); Roskey v. Tex. Health Facilities Comm’n, 639
S.W.2d 302, 303 (Tex. 1982). Once the movant proves a right to a summary
judgment, the burden shifts to the nonmovant to present evidence creating genuine
issues of material fact. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.
1985).
          When, as here, both sides move for summary judgment and the trial court
grants one motion and denies the other, we review the summary judgment proof
presented by both sides and determine all questions presented. See Comm’rs Court
v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Admiral Ins. Co. v. Trident NGL, Inc., 988
S.W.2d 451, 453 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). If we find
error, we must render the judgment the trial court should have entered. Agan, 940
S.W.2d at 81.
Deed Construction
          In this case, the resolution of the competing motions for summary judgment
turns on the construction of the language of the Original and Correction Deeds. The
construction of an unambiguous contract is a question of law, which is reviewed de
novo. MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex.
1999). It is a well-settled rule of law that, in the construction of written instruments,
all instruments in a chain of title, when referred to in a deed or any instrument
conveying an interest in real property, will be read into it. Dixon v. Amoco Prod. Co.,
150 S.W.3d 191, 194 (Tex. App.—Tyler 2004, no pet.); Harris v. Windsor, 279
S.W.2d 648, 649 (Tex. App.—Texarkana 1955), aff’d, 294 S.W.2d 798 (Tex. 1956). 
          Our primary concern in construing a deed is to ascertain the true intent of the
parties as expressed in the instrument. See Forbau v. Aetna Life Ins. Co., 876 S.W.2d
132, 133 (Tex. 1994). To determine the parties’ intent, extrinsic evidence is 
admissible only when an ambiguity appears on the face of the deed, in a suit for
reformation, or when a party alleges fraud, accident or mistake. See Ulbricht v.
Friedsam, 325 S.W.2d 669, 673 (Tex. 1959); Richardson v. Hart, 185 S.W.2d 563,
564 (Tex. 1945). In this case, because the Old TJC did not seek reformation and also
did not allege fraud, accident, or mistake, there must be an ambiguity in the deed
before we may consider affidavits and correspondence attached as summary judgment
evidence. See Rutherford v. Randal, 593 S.W.2d 949, 953 (Tex. 1980).


 Whether a
contract is ambiguous is also a question of law. See Columbia Gas Transmission
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). To determine
whether a contract is ambiguous, we look at the agreement as a whole in light of the
circumstances present when the parties entered into the contract. Nat’l Union Fire
Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). We examine and
consider the entire writing in an effort to harmonize and to give effect to all the
provisions of the contract so that none will be rendered meaningless. Forbau, 876
S.W.2d at 133-34. No single provision will control; rather, all provisions must be
considered with reference to the whole instrument. Id.
          If a written contract is worded in such a way that it can be given a definite or
certain legal meaning, then the contract is not ambiguous. CBI Indus., 907 S.W.2d
at 520. A contract is ambiguous only if its meaning is uncertain or if it is subject to
two or more reasonable interpretations. Id. An ambiguity does not arise simply
because the parties advance conflicting interpretations of the contract. Forbau, 876
S.W.2d at 134.
          Moreover, we may not consider extrinsic evidence to contradict or to vary the
meaning of unambiguous language in a written contract in order to create an
ambiguity. Sears, Roebuck & Co. v. Commercial Union Ins. Corp., 982 S.W.2d 151,
154 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A court may consider the
parties’ interpretations of the contract through extrinsic or parol evidence only after
a contract is first determined to be ambiguous. See Friendswood Dev. Co. v. McDade
+ Co., 926 S.W.2d 280, 283 (Tex. 1996). An “ambiguity must become evident when
the contract is read in context of the surrounding circumstances, not after parol
evidence of intent is admitted to create an ambiguity.” CBI Indus., 907 S.W.2d at
521.
          An ambiguity in a contract may be said to be “patent” or “latent.” Id. at 520. 
A patent ambiguity is evident on the face of the contract. Id. A latent ambiguity
arises when a contract that is unambiguous on its face is applied to the subject matter
with which it deals and an ambiguity appears by reason of some collateral matter. Id.


 
If a latent ambiguity arises from this application, parol evidence is admissible for the
purpose of ascertaining the true intention of the parties as expressed in the agreement. 
Id. When a latent ambiguity arises, the focus shifts to the facts and circumstances
under which the agreement was made. GTE Mobilnet of South Tex. Ltd. P’ship v.
Telecell Cellular, Inc., 955 S.W.2d 286, 290 (Tex. App.—Houston [1st Dist.] 1997,
pet. denied). A latent ambiguity exists when the contract appears to convey a sensible
meaning on its face, but it cannot be carried out without further clarification. See CBI
Indus., 907 S.W.2d at 520; Eckels v. Davis, 111 S.W.3d 687, 695 (Tex. App.—Fort
Worth 2003, pet. denied). 
Old TJC’s Cross-Motion for Partial Summary Judgment
          In its Cross-Motion for Partial Summary Judgment, the Old TJC argued that
HL&P’s motion for summary judgment was without merit because, “based on the
affidavits attached” to the motion,


 the facts “indisputably” established (1) that the
1990 Correction Deed was not intended to, nor did it, affect the Old TJC’s reverter
interest contained in the 1986 Deed because it “clearly intended the 1990 Correction
Deed only to correct the metes and bounds description in the 1986 Special Warranty
Deed” and the latent ambiguity in the Correction Deed allowed the introduction of
extrinsic evidence; and (2) that Fort Bend County, by its actions on April 12, 1996,
triggered the reverter provision in the 1986 Deed causing title to the 60.724 acres to
revert automatically to the Old TJC. 
Construction of the Correction Deed 
          To construe the rights of the Old TJC and Fort Bend County under the
Correction Deed, we must first read it together with the Original Deed to which it
specifically references. See Dixon, 150 S.W.3d at 194; Harris, 279 S.W.2d at 649.
It is well established under Texas law that a party cannot convey to another a greater
interest in a property than it possesses. See Morris v. Eddins, 44 S.W. 203, 204 (Tex.
Civ. App. 1898). 
          Pursuant to the plain language of the Original Deed, the Old TJC granted all
of its “rights, title, and interest” in the subject property to Fort Bend County and only
retained a reversionary interest in the property. The Old TJC’s subsequent grant of
all of its “rights, title, and interest” to the property in the Correction Deed could only
pertain to its reversionary interest, nothing more. Accordingly, following the
execution of the Correction Deed, the Old TJC retained no interest in the subject
property. 
          In its Cross-Motion for Summary Judgment, the Old TJC attempted to
introduce extrinsic evidence that would prove otherwise and argued that “any latent
ambiguity in the 1990 Correction Deed allows for the introduction of extrinsic
evidence of the grantor’s intent to retain a reverter interest in the property.” The Old
TJC asserts that there is a latent ambiguity in the Deeds because the 1990 Correction
Deed “incorrectly states that the 1986 Special Warranty Deed conveyed ‘all of
Grantor’s rights, title, and interest in and to’ the Property, while, on the face of the
1986 Deed, it stated that the grantor retained a reverter interest.” 
          However, our review of a latent-ambiguity argument does not hinge on whether
the deed “incorrectly states” a conveyance. Rather, we must determine whether the
deed, as it appears, can be carried out without further clarification. See CBI Indus.,
907 S.W.2d at 520; Eckels, 111 S.W.3d at 695. Furthermore, in construing the
language of deeds, we do not use parol evidence to create ambiguity when none
exists. Commercial Union Ins. Corp., 982 S.W.2d at 154. 
          Here, the Correction Deed can be performed as written and does not require
further clarification. When both deeds are read together, the Correction Deed’s
recital language cannot be logically interpreted as implying that the Original Deed did
not contain a use restriction. Accordingly, we hold that there is no latent ambiguity
in the 1990 Correction Deed and, because the Old TJC did not plead fraud, accident,
or mistake, the trial court should not have considered extrinsic evidence in its
contrary determination below. Based on the unambiguous language of the Deeds,
following the execution of the Correction Deed, the Old TJC retained no interest in
the subject property. 
 
Legal Effect of Correction Deed
          In its cross-motion for partial summary judgment, the Old TJC asserted that the
Correction Deed “was entitled a ‘Correction Deed’ for a reason, and its recitals
clearly indicate that its sole intent was to do nothing other than that which its title
suggests—to correct the property description—and not to convey a greater interest
in the property.” In support of this position, the Old TJC contended that its case was
“indistinguishable” from the facts in Parker v. McKinnon, 353 S.W.2d 954 (Tex.
App.—Amarillo 1962, writ ref’d n.r.e.).
          In Parker, which concerned an action in trespass to try title to an undivided
one-half mineral interest in a section of land, all parties claimed under a common
source of title. Id. at 954. Parker claimed title through a correction deed, and
McKinnon claimed title through a predecessor title. Id. at 954-55. The correction
deed neglected to mention the division of the mineral interest in the property that had
previously been divided in the original deed. Id. at 955. Neither party contended that
the correction deed was ambiguous, and the Amarillo Court of Appeals held that,
when read together with the original deed, the correction deed by its own terms was
executed “for the purpose of correcting an error in a former deed.” Id. at 956. The
court concluded that “the correction deed is looked to in aid of the description given
in the prior deed, and as between the parties thereto the second deed relates back and
becomes effective as of the date of the first deed.” Id. 
          Here, unlike in Parker, the Correction Deed addressed more than “correcting
an error.” It stated “WHEREAS, Grantor [the TJC] and Grantee [Fort Bend County]
desire to correct the property description contained in the Original Deed so that the
public records will show that FORT BEND COUNTY’S rights in and to the deeded
lands were and intended to be, and are in and to the tract of land hereinafter correctly
described; . . . .” Following this statement is essentially a rewording of the entire
deed. There is not simply a correct statement of the metes and bounds description of
the property. In fact, immediately after the revised metes and bounds description of
the property, the correction deed included a new habendum clause that stated 
TO HAVE AND TO HOLD the above described rights, title, interest,
claim, and demand, to the said GRANTEE [Fort Bend County], its heirs
and assigns forever, so that neither the GRANTOR [the Old TJC], its
legal representatives or assigns shall have any right or title to or interest
in such property, premises, or appurtenances, or any party thereof, at any
time hereafter.

The correction deed in Parker is substantially different from the Correction Deed
before us because, here, both the granting clause and the habendum clause express
a clear intent that the Old TJC be divested of all of its claim to the property, including
the interest that had been reserved in the 1986 Deed. Entitling the 1990 Deed a
“Correction Deed” neither rendered these provisions meaningless nor altered the
principle that the meaning of the instrument must be determined from review of the
deed’s four corners and application of the rules of construction. Regardless of what
they meant to say, effect must be given to what the parties did say in the 1990 Deed. 
Furthermore, Parker does not stand for the proposition that “correction deeds” can
be used only to correct a property’s description. The court simply held that, in
Parker, the “language clearly indicates the correction deed was simply intended to
correct the description of the land conveyed in the prior deed.” Id. That is not the
case with the Correction Deed before us.



          The Old TJC also relies on Joe T. Garcia’s Enterprises v. Snadon, 751 S.W.2d
914 (Tex. App.—Dallas 1988, writ denied) to support its position that a correction
deed can correct only a property description. In Snadon, the case related to restrictive
covenants on a 2.3-acre tract of land originally owned by Snadon in Dallas County. 
Id. at 915. Snadon conveyed his property to King and Simpson free of any restrictive
covenants. Id. Two months later, a “Correction Warranty Deed,” signed only by
Snadon, was filed in the deed records in Dallas County. Id. The correction deed was
to correct an “erroneously omitted” restriction that the land be used for a “modern
first class restaurant.” Id. Through a series of transactions, Garcia, who purchased
the property from King and Simpson “subject to the restrictive covenants,” filed an
action for declaratory judgment that the restrictive covenants on the land were
invalid. Id. at 915-16. The Dallas Court of Appeals reversed the trial court and held
that “a correction deed is executed and recorded for the unique purpose of correcting
a scrivener’s error in the description of the property.” Id. at 916. We disagree with
the Dallas Court of Appeals’ narrow reading of this term, and we do not read the
cases cited by that court to support this proposition.


 
          Contrary to the cases cited by the Old TJC, in Halbert v. Green, 293 S.W.2d
848 (Tex. 1956), the Texas Supreme Court addressed a case in which a “correction
deed” appeared “to have been to change the nature of the estate granted from an
interest in the minerals to an interest in royalty, to change the fractional interest . . .
to the oil and gas . . . and to cut down the interest from one in perpetuity to a term
interest. . . .” Id. at 851. The “correction deed . . . changed completely the nature of
the estate conveyed to and owned by the respondents.” Id. The Texas Supreme
Court never mentioned the significance of the title of the deed. There is no
declaration that “a correction deed is executed and recorded for the unique purpose
of correcting a scrivener’s error in the description of the property.” Therefore, we
refuse to follow Snadon, and we hold that a correction deed can do more than simply
correct a scrivener’s error in the description of the property.
HL&P’s Motion for Summary Judgment
          In its motion for summary judgment, HL&P asked the trial court to declare that
the Old TJC owned no compensable interest in the property that HL&P purchased
from Fort Bend County. Specifically, it asserted that (1) the effect of the 1990 deed
was, as stated in the deed, to grant “all of [the Old TJC’s] rights, title, interest, claim
and demand” to the property “so that neither [the Old TJC], its legal representatives
or assigns shall have any right or title or interest in such property . . . at any time
hereafter”; (2) the combined effect of the 1986 and 1990 deeds was to grant fee
simple title to the surface estate of the property to Fort Bend County, effective as of
April 21, 1986; the limitation language in the 1986 deed was “relieved by the
retroactive grant and habendum language in the second deed”; and (3) HL&P
purchased the land owned by Fort Bend County, and HL&P took it free of any claims
by the Old TJC. For the reasons set out above, we agree with HL&P’s position. 
          After a de novo review of the 1986 Deed and 1990 Correction Deed, we hold
that, because the Deeds are not ambiguous, and because the Old TJC did not plead
fraud, accident, or mistake, we cannot consider extrinsic evidence. We hold that the
1990 Correction Deed created an unrestricted conveyance to Fort Bend County and
the trial court erred in granting the Old TJC’s motion for summary judgment and in
denying HL&P’s motion for summary judgment. 
          We sustain HL&P’s first, fifth, and sixth issues.
Conclusion
          Having sustained HL&P’s first, fifth, and sixth issues and having held that the
trial court erred in granting the Old TJC’s summary judgment motion and in denying
HL&P’s summary judgment motion, we need not address HL&P’s second, third,
fourth issues addressing the reversionary interest. We reverse the trial court’s
judgment and render judgment in favor of HL&P.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.