In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00211-CV
_____

IVY BELL, Appellant

V.

MIDWAY PETROLEUM GROUP, L.P., Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-10-13053**

**MEMORANDUM OPINION**

In this action pleaded as a trespass to try title action, suit to quiet title and for possession of real property, as well as a counterclaim for title by adverse possession, Ivy Bell appeals the trial court's judgment awarding title and possession of a tract of property to Midway Petroleum Group, L.P. Following a bench trial, the trial court concluded that Midway proved its superior title to an .878 acre tract (sometimes referenced as the .883 acre tract) of land and Bell failed to sufficiently prove his adverse possession claim, thus entitling Midway to record title and possession of the

1

property. Relevant to this appeal, the trial court also ruled that Midway was entitled to recover attorney's fees from Bell totaling $20,000, in addition to certain attorney's fees in the event of an appeal to the Court of Appeals or Texas Supreme Court.

In three issues, Bell claims that the trial court erred when it awarded the property to Midway, Bell maintains that he conclusively proved he has been in continuous possession of the property since 1989 entitling him to superior title by adverse possession, and finally, the trial court erred when it awarded attorney's fees to Midway. We affirm the trial court's judgment.

## Background

The property in dispute is a tract of land located in Montgomery County. According to Midway, in 1964, Hubert Vestal and James M. Smith purchased the property from the heirs of Dick Nailor. Bell owns land in close proximity to the property in question. In 2012, Bell moved equipment and supplies onto the property. Thereafter, Vestal sent notice to Bell asserting his ownership of the property and demanding Bell vacate the property. Bell, being represented by legal counsel, disputed Vestal's claim of record title and asserted his right by adverse possession. In 2017, Vestal filed an eviction action against Bell in the Justice Court, but the lawsuit was dismissed for lack of jurisdiction because of Bell's claims of adverse possession. After the lawsuit's dismissal, Bell then cleared the property and placed signs around the property.

2

Vestal then filed the underlying lawsuit against Bell to quiet title and requested, among other relief, that Bell be evicted from the property. In 2018, Vestal sold the property to Midway. After Vestal sold the property, Midway was substituted as the plaintiff. Bell responded to the lawsuit alleging that he owns the property, Vestal presented an invalid deed which does not pertain to the property, and he has been in adverse possession of the property for at least twenty-five years. After a trial to the bench, the trial court entered a judgment that Midway had "superior and equitable title" to the property and that Bell had five days to vacate. The trial court denied Bell's adverse possession claim and ordered Bell to pay Midway's attorney's fees. At Bell's request, the trial court issued the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. Plaintiff Midway Petroleum Group, LP is a Texas Limited Partnership with its corporate office in Montgomery County, Texas.

2. Ivy Bell is an individual residing in Montgomery County, Texas.

3. On November 9, 1964, a Warranty Deed was given to Hubert Vestal and James M. Smith covering the Property. This Deed is recorded in Volume 623, page 883, et seq., of the Deed Records of Montgomery County, Texas. Thereafter, Jamie Lynn Smith Tisdale, the sole surviving heir of James M. Smith conveyed all her undivided interest to Hubert Vestal. This Deed is recorded under County Clerk's File Number 2010112685 of the Deed Records of Montgomery County, Texas.

4. The November 9, 1964, Warranty Deed included the real property located in Tamina, Montgomery County, Texas, descri[b]ed more fully

3

in Exhibit "A" (the "Property") attached hereto and incorporated herein.

5. On September 27, 2018, Hubert Vestal sold the Property to Midway Petroleum Group, LP.

6. On September 27, 2018, Hubert Vestal assigned all of his claims in this lawsuit to Midway Petroleum Group, LP[.]

7. Ivy Bell has not adversely possessed the Property.

8. The Property is owned by Midway Petroleum Group, LP.

9. Hubert Vestal presented its pre-suit notice to Ivy Bell in a timely fashion.

10. Midway's reasonable and necessary attorney's fees are $20,000.00 for this lawsuit, $10,000.00 for an appeal to the Court of Appeals, and $5,000.00 for an appeal to the Supreme Court.

## Conclusions of Law

11. Midway's claims against Ivy Bell are granted.

12. Midway is the proper owner in fee simple of the Property.

13. There was no evidence that Ivy Bell tort[i]ously interfered with the sales contract between Hubert Vestal and Ivy Bell. Midway takes nothing on its claims for tortious interference.

14. Midway is entitled to recover its reasonable and necessary attorney's fees in the amount of $20,000.00 for trial and preparation, $10,000.00 in attorney's fees in the event of an appeal to the Court of Appeals, $5,000.00 in attorney's fees in the event of an appeal to the Supreme Court of Texas.

15. Midway is entitled to post judgment interest at the rate of five percent (5%) per annum.

16. Midway is entitled to costs of Court.

4

17. Defendants' counterclaims are hereby denied.

Bell then timely appealed.

## Sufficiency

In his second issue on appeal, Bell challenges the trial court's finding that Midway had superior title to the property arguing that the evidence is legally insufficient to support that finding.[1]

In an appeal from a bench trial, an appeals court reviews a party's legal sufficiency challenge under the same standards that are applied to the review of a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When reviewing a finding for legal sufficiency, we credit the favorable evidence if a reasonable factfinder could and disregard the contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "When appellants attack the legal sufficiency of an adverse finding on an issue on which they did not have the burden of proof, they must demonstrate on appeal that no evidence supports the adverse finding." *Campbell v. DLJ Mortg. Capital, Inc.*, No. 01-18-01047-CV, 2020 WL 5048136, at *5 (Tex. App.—Houston [1st Dist.] Aug. 27, 2020, no pet.) (mem. op.) (citing *Exxon Corp. v. Emerald Oil & Gas, Co.*,

---

[1] Bell challenges both the trial court's finding that Midway had superior title and its denial of his adverse possession claim in his second issue. As such, we will address each sub-issue separately.

*L.C.*, 348 S.W.3d 194, 215 (Tex. 2011)). On review, the appeals court will sustain a no-evidence point if

> (1) the record discloses a complete absence of evidence of a vital fact[,] (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact[,] (3) the evidence offered to prove a vital fact is no more than a mere scintilla[,] or (4) the evidence establishes conclusively the opposite of the vital fact.

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). In addition, the trial court, which acted as the factfinder, determined credibility of the testifying witnesses and what weight to assign to the evidence admitted. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also City of Keller*, 168 S.W.3d at 819.

While we review the trial court's factual findings following a bench trial in the light most favorable to the verdict, we review the trial court's legal conclusions de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Nonetheless, if a party demonstrates in an appeal that the trial court erred, the trial court's judgment will not be reversed if the trial record shows that the trial court, despite its error, reached the proper judgment. *See id.*

Bell challenges the legal sufficiency of the evidence supporting the trial court's conclusion that Midway's evidence established a formal chain of title to the contested tract traceable to a patent deed issued by the sovereign. To prevail on a trespass-to-try-title claim, the party must establish that it has (1) title emanating from the sovereignty of the soil, (2) superior title in itself emanating from a common

6

source to which the defendant claims, (3) title by adverse possession, or (4) title by earlier possession coupled with proof that possession has not been abandoned. *See Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). Midway was required to prove that it had a regular chain of conveyances from the sovereign to prevail. *See id.*

At trial, Midway presented a deed dated November 9, 1964. The deed purports to convey to Hubert Vestal and James M. Smith, several different tracts of land but specifically the land at issue in this case, under paragraph five of the deed.[2] Paragraph five contains the following language:

> Being 33.3 acres of land, more or less, in the Montgomery County School Land Survey and being the same property described in deed from _____ to _____ dated _____, and recorded in Volume _____, Page _____, Deed Records, Montgomery County, Texas, which reference is here made for all purposes.

The deed also contains the following Mother Hubbard Clause.

> It is the intention of Grantors herein to convey unto Grantees all of the lands and properties and all right title and interest therein which Grantors may own or possess in the Montgomery County School Land Survey, Matilda Wilborn Survey, and the N. Dial Survey, Montgomery County, Texas.

Under Texas law, a deed "must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed

---

[2] The heirs of James M. Smith conveyed all rights to any land listed in the 1964 deed to Vestal in 2010 in a Special Warranty Deed.

may be identified with reasonable certainty." *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945) (citation omitted); *see also AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008) (noting that conveyances of land require a description of the property sufficient to allow an individual to locate the conveyed property with reasonable certainty). The sufficiency of the legal description in a deed presents a matter generally resolved as a question of law. *See Wiggins v. Cade*, 313 S.W.3d 468, 472 (Tex. App.—Tyler 2010, pet. denied); *Dixon v. Amoco Prod., Co.*, 150 S.W.3d 191, 194 (Tex. App.—Tyler 2004, pet. denied). "To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed." *Hahn v. Love*, 394 S.W.3d 14, 25 (Tex. App.–Houston [1st Dist.] 2012, pet. denied).

At trial, Midway called Lyn Wingert as an expert witness regarding the title history of this property. According to Wingert, she has known Vestal since the mid 1980's and has assisted him in selling various portions of land granted to him under the 1964 deed, without issue. Wingert testified that the grantors who sold the land to Vestal did not know the exact size of the property they were conveying and that there was never a formal survey performed on the property at the time of the sale.

> Well, there never was a deed for 33 acres, because when this property was sold by the heirs of the Nailor family 50 years after Mr. Nailor passed away, they had an estimate. This was timberland, basically, and it was not worth hardly any money at all; and so no big survey was actually done. And this is a residual number. It was a much larger tract; and over time, pieces got sold off to different people, and so this is the amount that was remaining . . . at the time that Smith and Vestal bought it.

8

Because the acreage of the land was undetermined, Wingert explained that the 1964 deed contained a Mother Hubbard clause that stated the sellers conveyed to Vestal and Smith all the property that they owned within the Montgomery County School Land Survey. Wingert stated that the disputed .878 acre tract of land is contained in the Montgomery County School Land Survey. During cross-examination, Wingert admitted that the Montgomery County School Land survey contains "lots of acres of land." Wingert stated that grantors of the 1964 deed were implicitly selling land they owned in the survey although the land is not listed by metes or bounds and confirmed that there was no deed for the 33.3 acres listed in the 1964 deed.

The description of the property in the 1964 deed does not provide any means or data by which the property can be identified. *See Morrow v. Shotwell*, 477 S.W.2d 538, 539–40 (Tex. 1972). The deed in question does not provide an unambiguous recitation of the land conveyed, nor was there any evidence presented at trial that identified the land with reasonable certainty. *See id.* While a trial court can consider parol evidence to explain or clarify a deed, the parol evidence cannot supply essential terms missing from the deed. *See Manor v. Manor,* No. 02-18-00056-CV, 2019 WL 7407740, at *4 (Tex. App.—Fort Worth Dec. 31, 2019, pet. denied) (mem. op.). We are cautioned by the Texas Supreme Court in relying too heavily on parol evidence introduced at trial to aid in determining the knowledge and intent of the parties.

> The certainty of the contract may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. The

9

details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum.

*Morrow*, 477 S.W.2d at 541 (quoting *O'Herin v. Neal*, Tex. Civ. App., 56 S.W.2d 1105, writ ref'd)). As such, the deed in paragraph five fails to properly identify the land in question to be conveyed to Vestal.

However, the deed does contain a Mother Hubbard clause in paragraph nine. The Texas Supreme Court addressed a similar Mother Hubbard clause in *Davis v. Mueller* and concluded that although the description of the property was inadequate, the Mother Hubbard Clause was sufficient to convey all the property owned by the grantor in the expressly listed recorded surveys. 528 S.W.3d 97, 103 (Tex. 2017).

> [The appellee] also argues that, as we stated in *Texas Builders v. Keller*, a reference to "an unidentified portion of a larger, identifiable tract is not sufficient" to satisfy the Statute of Frauds. We agree with that proposition, of course, but it has no application here. A conveyance of the north or east part of a tract does not identify specific acreage; neither does a conveyance of a certain number of acres out of a subdivision or survey in which the grantor owns multiple tracts. The rule Mueller cites would apply if [the grantors] had conveyed part of what they owned in Harrison County, because the parts could not be identified from the deeds. But they conveyed *all.*

*Id*. at 102 (citations omitted) (emphasis added). The Texas Supreme Court stated that appellee Mueller was not arguing that the grantors did not own the property conveyed, only that the deficiencies of the land conveyed cannot be cured by the

10

Mother Hubbard clause. *Id*. at 101–02. The Court rejected this idea and stated that the "general grant's conveyance of 'all of the mineral, royalty, and overriding royalty interest owned by Grantor in Harrison County, whether or not same is herein above correctly described' could not be clearer. *All means all*." *Id.* at 102 (emphasis added). We are faced with a similar situation. Although we hold that the description of the property sought to be conveyed in the 1964 deed is inadequate, the Mother Hubbard clause in paragraph nine conveys all property owned by the grantors in the "Montgomery County School Land Survey, Matilda Wilborn Survey, and the N. Dial Survey, Montgomery County, Texas." As the *Davis* court explained, this conveyance is unambiguous and means all land. Bell does not dispute that the land in question was owned by the grantors, only that Midway, through Vestal and the 1964 deed, does not have superior title because the description in paragraph five is inadequate.[3] And while we agree that the description in paragraph five is inadequate, the grantors' conveyance of all property listed within the "Montgomery County School Land Survey, Matilda Wilborn Survey, and the N. Dial Survey, Montgomery County, Texas[]" provides the grantors intended to convey all land owned by grantors in those surveys to Vestal, necessarily including the .878 acre parcel in dispute. *See Davis*, 528 S.W.3d at 102.

---

[3] While the record shows Bell never requested an abstract of title, testimony was presented at trial by Wingert, without objection, that she traced the title to the land in question "all the way back to the [S]tate of Texas[.]"

11

## Adverse Possession

In his second issue, Bell also argues the trial court erred when it denied his claim of adverse possession for the .878 acres.

A party seeking to establish title to land by adverse possession has the burden of pleading and proving every fact essential to that claim. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *Harlow v. Giles*, 132 S.W.3d 641, 646 (Tex. App.—Eastland 2004, pet. denied). Texas law requires that adverse possession be "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1). The possession must be actual, visible, continuous, notorious, distinct, hostile, and of such a character "as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes*, 802 S.W.2d at 645 (quoting *Satterwhite v. Rosser*, 61 Tex. 166, 171 (Tex. 1884)). However, "'hostile' use does not require an intention to dispossess the rightful owner, or even know that there is one." *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006). Nonetheless, "there must be an intention to claim property as one's own to the exclusion of all others[.]" *Id.* "Belief that one is the rightful owner and has no competition for the ownership of the land at issue is sufficient intention of a claim of right." *Kazmir v. Benavides*, 288 S.W.3d 557, 564 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citations omitted). Generally, whether a party has proven

a claim of adverse possession is a matter that is resolved as a question of fact. *See Estrada v. Cheshire*, 470 S.W.3d 109, 123 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

Bell called several witnesses to testify regarding his claim for adverse possession, including testifying himself at trial. Andrew Robinson stated that he has known Bell since at least 1989 and that he has on several occasions helped Bell "take[] down dead trees . . . brought dirt for low spots and . . . I did some clearing[.]" He testified that he has continued to work for Bell from 1989 until the present and that he has noticed Bell's equipment and different items on the land.

Johnny Jones testified that he lives in close proximity to the .878 acres and that Bell has occupied that acreage since the "[19]80[']s." He stated that Bell has used the property to store his equipment and that Bell maintained he owned the land. According to Jones, no one else occupied the property.

Arthur Terry testified that his Mother lives "diagonally across the road[]" from Bell's property. He stated that he has lived at his Mother's home except for a few years in college and the military. Bell moved into his property in 1989 or 1990. Terry stated he is aware of the .878 acres and that he has been on the property before, though he could not identify a certain calendar time period. He testified that he believed Bell had occupied the land, starting a couple of years after he moved to his home, "roughly [19]92, [19]93." According to Terry, Bell kept "a backhoe, some

13

telephone poles, and other little stuff, like, little battery-operated, like, golf cart or some kind of thing back there [on the property.]"

Bell testified that he has lived at his current property since 1989. He stated that he has been in continuous possession of the .878 acres since 1989. Bell stated he has used the land for "storing . . . I got a lot of equipment; trailers, material, cement poles, rocks, a lot of iron, burning, fire power[,]" and that he has "lots of stuff back there; cars, bricks, just common use for storage, fence post and fence, just common use." Pictures were admitted at trial that according to Bell portrayed a sign that states "No trespassing, Bell."

Wingert testified that she has been to the .878 acres "hundreds of times . . . since the 1980's." She stated that in the last 40 years she has never seen a building on the .878 acres, and prior to the land being cleared in 2017 it was only occupied by "animals and mosquitoes." She described the .878 acres as heavily forested and not something that you could easily access except for a few footpaths. Wingert testified that she helped Vestal pay taxes on his properties including the .878 acres and he paid "thousands and thousands of dollars, over time. He has since 1968. That's a long time." She was not aware that Bell had ever paid taxes on the property.

Naresh Mittal testified that he is President of Midway. According to Mittal, when he purchased the two acres he walked an easement and viewed the .878 acres in 2013. He stated the land was heavily forested, making it difficult to walk. There

14

was no sign of occupation on the land. Mittal stated the easement was clear, but he was not sure if Bell was maintaining that easement. In 2015, Mittal purchased more property and again walked the land and viewed the .878 acres. He again stated that there were no signs of occupation and that the .878 acres was covered in dense forest. During the pendency of this lawsuit, Midway purchased the .878 acres from Vestal.[4] Mittal stated that in 2013, he noticed "maybe two things lying on the floor, like in front of that where the easement ends[]" in the .878 acres. But in 2017, items "kept on piling up" on the property. Later, a bulldozer showed up on the .878 acres and Bell's attorney accused Midway of encroaching on "Ivy Bell's tract[.]" Mittal told Bell's attorney he did not know who owned the bulldozer, and someone stated he was going "'to take a gun and go get those people out of that property.'" According to Mittal, thereafter, the .878 acres was cleared and signs were posted on the property. Mittal confirmed he is currently paying taxes on the .878 acres.

Manjeet Ghuman testified that he was present with Mittal when he walked his property in 2013 and described the .878 acres as a dense forest with no sign of anyone occupying the property. He stated the .878 acres was still dense forest in 2015. He did confirm there were a few items on the front of the .878 acres in 2015, but he did not know who owned the items.

---

[4] Because of the purchase, Midway was assigned all of Vestal's claims in this lawsuit.

Bell bore the burden of proving every element of his adverse possession claim at trial. *See Rhodes*, 802 S.W.2d at 645. Texas law requires "[t]he possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership by the occupant." *Acrey v. Langston Land Partners*, *LP.*, No. 11-14-00025-CV, 2016 WL 1725371, at *2 (Tex. App.—Eastland Apr. 29, 2016, no pet.) (mem. op.) (citations omitted). Testimony was conflicting about whether the land was cleared by Bell before 2017 and to "claim property through adverse possession, 'the possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant.'" *Wells v. Johnson*, 443 S.W.3d 479, 489 (Tex. App.— Amarillo 2014, pet. denied) (quoting *Rick v. Grubbs*, 214 S.W.2d 925, 927 (1948)). At most, the evidence presented demonstrated that Bell's occupation was contested and "presented nothing more than an opportunity for the trial court, as fact finder, to weigh the credibility of the witnesses, draw inferences and make reasonable deductions from the evidence and to believe or disbelieve all or part of it." *Harlow*, 132 S.W.3d at 650 (citation omitted). Generally, adverse possession is a question of fact, and we are mindful of our duty upon review and defer to the trial court as factfinder. *Heirs of Simmons v. Bouligny*, No. 13-09-00269-CV, 2010 WL 1619069, at *7 (Tex. App.—Corpus Christi Apr. 22, 2010, no pet) (mem. op.); *see also Rhodes*, 802 S.W.2d at 646.

**Attorney's Fees**

Bell next contests the trial court's award of attorney's fees to Midway. Under section 16.034(a) of the Texas Civil Practice and Remedies Code, the trial court may award attorney's fees to a prevailing party in a trespass to title case involving adverse possession. Tex. Civ. Prac. & Rem. Code Ann. § 16.034(a). Specifically, 16.034(a) states

> In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court [] shall award costs and reasonable attorney's fees to the prevailing party if the court finds that the person unlawfully in actual possession made a claim of adverse possession that was groundless and made in bad faith[.]

*Id.* § 16.034(a)(1). However, in the absence of a finding that the person made a claim of adverse possession that was groundless and in bad faith, the court "may award costs and reasonable attorney's fees to the prevailing party[.]" *Id.* § 16.034(a)(2). The decision of a trial court to award attorney fees under section 16.034(a)(2) is discretionary and reviewed under an abuse of discretion standard. *See id.*; *Smith v. McCarthy*, 195 S.W.3d 301, 304 (Tex. App.—Fort Worth 2006, pet. denied). "A trial court abuses its discretion when it acts arbitrarily and unreasonably, or without reference to guiding rules and principles." *Martin v. Cockrell*, 335 S.W.3d 229, 242 (Tex. App.—Amarillo 2010, no pet.). Section 16.034 further requires the following

17

to recover attorney's fees in a suit for possession of real property with one party claiming adverse possession:

> (b) To recover attorney's fees, the person seeking possession must give the person unlawfully in possession a written demand for that person to vacate the premises. The demand must be given by registered or certified mail at least 10 days before filing the claim for recovery of possession.

> (c) The demand must state that if the person unlawfully in possession does not vacate the premises within 10 days and a claim is filed by the person seeking possession, the court may enter a judgment against the person unlawfully in possession for costs and attorney's fees in an amount determined by the court to be reasonable.

Tex. Civ. Prac. & Rem. Code Ann. § 16.034(b), (c).

Bell is not contesting that he made a claim of adverse possession triggering section 16.034 but that Midway failed to send "a demand with the warning required by [section] 16.034[.]"[5] Bell's judicial admission of unlawful actual possession is sufficient for the trial court to award attorney's fees under section 16.034, therefore eliminating the requirement of a factual determination whether Midway was entitled to attorney's fees. *See Maldonado v. Empire Land Co. Ltd.*, No. 04-09-00104-CV, 2010 WL 3250025, at *3 (Tex. App.—San Antonio Aug. 18, 2010, no pet.) (mem. op.) (citations omitted) (explaining that because "[The appellants] judicially

---

[5] *See Sullivan v. Abraham*, No. 07-17-00125-CV, 2018 WL 845615, at *10 (Tex. App.—Amarillo Feb. 13, 2018, no pet.) (mem. op.) (explaining a plaintiff can challenge the award of attorney's fees in a post judgment motion and outlining various sister courts refusing to review an issue of attorney's fees that was not preserved on appeal either during trial or in a post judgment motion).

18

admitted their unlawful possession by pleading it before trial[,] no further jury finding was required to award [the appellee] attorney's fees under section 16.034(a)."). As such, the trial court did not abuse its discretion in awarding fees under section 16.034(a)(2).

We note that Bell argues that Midway, as substitute plaintiff for Vestal, failed to send proper notice in its demand letter as required by section 16.034. Midway presented two demand letters sent by Vestal to Bell before initiation of the current lawsuit. In a letter dated September 13, 2017, Vestal demands that Bell vacate the property in "five (5) days[]" not ten days and fails to state he may be subject to legal action if he refuses and attorney's fees pursuant to section 16.034(c). *Id*. In a second letter dated September 27, 2017, Vestal demands that Bell respond to the letter in ten days, and states that Bell's "prompt attention . . . can avoid the cost of any further legal action." *Id*. Because Midway assumed the claims of Vestal in this lawsuit while the lawsuit was pending, Midway could rely upon the notices sent by Vestal and received by Bell. Midway expressly pleaded that proper notice was sent to Bell pursuant to section 16.034(c) prior to the lawsuit and Bell failed to specially deny or otherwise specially except to the pleading. Tex. R. Civ. P. 54. Further, because the trial court's award of attorney's fees under section 16.034 is discretionary in this case, we reject this argument. While Vestal's written notice may not have specifically tracked the language of section 16.034(c), an attorney continuously

represented Bell during this period, the notices alerted Bell that he needed to remove himself from the property, and the notices provided him at least ten (10) days to comply before litigation was commenced seeking attorney's fees. The record demonstrates substantial compliance with the statute, and the trial court is allowed to exercise its discretion under 16.034(a)(2) to award attorney's fees. *See RDG P'ship v. Long*, 350 S.W.3d 262, 276 (Tex. App.—San Antonio 2011, no pet.) (explaining "the statute affords the trial court a measure of discretion in deciding whether to award attorney's fees[]" and an abuse of discretion occurs only when the "decision is arbitrary, unreasonable and without reference to any guiding rules and principles."). We overrule Bell's final issue.

## Conclusion

Having overruled Bell's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 17, 2020
Opinion Delivered March 18, 2021

Before Kreger, Horton, and Johnson, JJ.