Mark CANTU, Appellant,

v.

J. Michael MOORE, Carlos L. Guerra,
and Guerra & Moore, L.L.P.,
Appellees.

No. 04–01–00524–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 4, 2002.

Cornelio Garza, Glenn D. Romero, Juan A. Gonzalez, Law Office of Glen D. Romero, P.C., Mark A. Cantu, Law Office of Mark A. Cantu, Roberto Salazar, McAllen, for Appellant.

Dori C. Garza, Garza & Garza, L.L.P., McAllen, Adam Poncio, Cerda & Poncio, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: PHIL HARDBERGER, Chief Justice.

Mark Cantu ("Cantu") appeals a judgment in a suit involving a claim for breach of a settlement agreement. Cantu raises two issues on appeal, contending: (1) the trial court erred in granting a directed verdict; and (2) the evidence was insufficient to support the award of attorneys' fees. We overrule Cantu's first issue, but we sustain Cantu's second issue in part. We reverse the trial court's judgment as to the award of conditional appellate attorneys' fees and render judgment that the appellees are not entitled to recover appellate attorneys' fees. The remainder of the trial court's judgment is affirmed.

### BACKGROUND

Cantu entered into an agreement with appellees to split the attorneys' fees recovered in a lawsuit involving a house fire. After the lawsuit was settled, the appellees interpled the portion of the attorneys' fees to be paid Cantu under the agreement

($890,000) into the registry of the court in Starr County, claiming that Cantu had breached the agreement and, therefore, was not entitled to receive the attorneys' fees. Cantu obtained an order from a court in Hidalgo County which erroneously released the $890,000 to Cantu.[1]

On December 21, 2000, Cantu and the appellees mediated their dispute with regard to the $890,000. At the mediation, the parties agreed to settle their dispute, and the terms of the settlement were dictated to a court reporter. The record reflects that there was an open question as to the extent of the claims the settlement encompassed; however, the following day, the attorneys for both parties announced in open court that the parties had reached a complete settlement. Cantu subsequently refused to sign the final settlement documents and did not pay the appellees pursuant to the terms of the settlement. The appellees sued Cantu for breach of the settlement agreement. The trial court granted a directed verdict, finding Cantu had breached the settlement agreement and awarding the appellees $150,000 in actual damages. In addition, the jury awarded the appellees $11,000 in attorneys' fees, plus a conditional $35,000 for attorneys' fees if Cantu unsuccessfully appealed to an intermediate appellate court and $50,000 for additional attorneys' fees if Cantu unsuccessfully appealed to the Texas Supreme Court.

### DIRECTED VERDICT

In his first issue, Cantu contends that the trial court erred in granting the directed verdict because no enforceable Rule 11 agreement existed between the parties. Specifically, Cantu asserts that the agreement was not enforceable because: (1) the

agreement dictated to the court reporter was conditioned on Cantu's approval of the inclusion of additional cases; and (2) the agreement did not address the source from which the settlement amount would be paid or the terms of the indemnity.

■■■ "In reviewing a case in which a verdict has been directed, appellate courts must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences." *Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303–04 (Tex.1988). "If the appellate court finds that there is any evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue." *Id.*

At the conclusion of the mediation between the parties on December 21, 2000, the mediator dictated the terms of the settlement before a court reporter as follows:

MR. RAMIREZ: For the purpose of the record, my name is Edmundo Ramirez. The following is a Rule 11 agreement in full, final settlement of Cause No. DC–98–94 in the District Court of the 229th Judicial District, Starr County, Texas.... And this is Edmundo Ramirez as mediator in the capacity of mediator. This case has been settled today due to a mediation. The amount of the settlement is for $150,000. $100,000 to be paid by Wednesday, December the 28th .... 27th or 28th, whatever next Wednesday is. My office, Ellis, Koeneke & Ramirez, will prepare a full, final settlement documents releasing any and all claims that arose out of

---

1. The Hidalgo court was ordered to withdraw its order, but the funds already had been released to Cantu. *See In re Guerra & Moore,* *L.L.P.,* 35 S.W.3d 210 (Tex.App.-Corpus Christi 2000, orig. proceeding).

the above read cause numbers. Also included but not limited to those cause number referred to in Exhibit C in the "Petition in interpleader...." The settlement documents will be standard. There will be full releases including to the cases addressed in Exhibit C of said Pleading .... $100,000 to be paid next Wednesday. $50,000 balance to be paid as follows: $25,000 to be paid on January the 15th and $25,000 to be paid on March the 15.

Attorneys representing both parties were present and made announcements on the record. Cantu's attorney stated that the dictated terms were the general terms of the agreement subject to Cantu approving the addition of the other cases listed in Exhibit C. Cantu's attorney stated that he would attempt to reach Cantu that night and contact the other attorneys. The following day, December 22, 2000, the trial judge called the case for trial. Counsel for the appellees announced his appearance and stated, "It's our understanding this cause has been settled in mediation, yesterday, Your Honor." Cantu's attorney also announced his appearance and stated, "That's correct, Your Honor. That case has been before you." The trial judge asked if the case was completely settled, and Cantu's attorney responded, "Well, at least viz-viz to Guerra and Moore and Mark Cantu. The Cornelio Garza claims are still outstanding, but it's been resolved by summary judgment. So I think the case is fairly well-settled." Finally, in questioning one of the witnesses during the trial, Cantu asked, "Now, the $150,000 that I agreed to pay at the mediation...."

Rule 11 of the Texas Rules of Civil Procedure provides:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

TEX.R. CIV. P. 11. The purpose of the rule is to prevent parties from misconstruing oral settlement agreements. *Kosowska v. Khan*, 929 S.W.2d 505, 507 (Tex.App.-San Antonio 1996, writ denied).

■ In *Kosowska*, this court held that the requirements of Rule 11 were satisfied when the terms of the agreement were dictated before a certified shorthand reporter, and the record reflected who was present, the terms of the settlement, and the parties' acknowledgment of the settlement. 929 S.W.2d at 508. Similarly, in this case, the terms of the agreement were dictated before a certified court reporter, and Cantu's attorney acknowledged the settlement subject to Cantu's approval of the inclusion of the Exhibit C cases. The acknowledgment by Cantu's attorney of a full settlement the following day is evidence that Cantu approved the conditional term. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997) (holding attorney's statements to the court is some evidence of settlement agreement). In addition, Cantu's questioning during trial is also some evidence that he agreed to pay $150,000 pursuant to the terms of the settlement. Therefore, the settlement agreement in this case complied with Rule 11.

■ Even if we found that the settlement agreement did not conform with Rule 11, the trial court has the authority to enforce a nonconforming agreement for equitable reasons. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984). As the Texas Supreme Court has stated, " 'slavish adherence' to the literal language of the rule" is not required in all cases. *Id.* Cantu's attorney agreed to the terms of the settlement and announced in open court that a full settlement had been reached. Cantu acknowledged that he had

agreed to pay the $150,000 in settlement through his questioning at trial. Given those circumstances, the trial court could have determined that the equities of the situation required it to uphold the settlement agreement even absent technical compliance with Rule 11. *See Massey v. Galvan,* 822 S.W.2d 309, 318 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (enforcing agreement even absent technical compliance with Rule 11 based on equity).

■ Cantu also contends that the settlement agreement dictated to the court reporter lacked essential terms, namely, the source of the funds from which the settlement was to be paid and the terms of the indemnity. Whether a settlement agreement fails for lack of an essential term is a question of law to be determined by the court. *Ronin v. Lerner,* 7 S.W.3d 883, 888 (Tex.App.-Houston [1st Dist.] 1999, no pet.). We disagree that the source of the funds and the terms of the indemnity were essential terms. *See Ronin,* 7 S.W.3d at 888 (holding terms of indemnity were not essential terms). The settlement agreement contained all the material terms of the agreement: Cantu agreed to pay the appellees $150,000 and all parties agreed to execute full releases. *See Padilla v. LaFrance,* 907 S.W.2d 454, 460–61 (Tex.1995) (finding complete agreement where terms included agreement to pay in exchange for settlement); *CherCo Properties, Inc. v. Law, Snakard & Gambill, P.C.,* 985 S.W.2d 262, 266 (Tex.App.-Fort Worth 1999, no pet.) (holding agreement specifying terms of payment in exchange for releases contained all material terms).

Cantu's first issue is overruled.

## ATTORNEY'S FEES

In his second issue, Cantu challenges the sufficiency of the evidence to support the jury's award of attorneys' fees.

■ In reviewing a legal sufficiency challenge, all the record evidence and reasonable inferences from that evidence are reviewed in a light most favorable to the findings, and the finding is upheld if it is supported by anything more than a scintilla of evidence. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). In reviewing a factual sufficiency challenge, we examine all of the evidence and only set aside a finding if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ Michael Moore, who is an attorney, detailed all of the work the appellees' attorneys had undertaken in an effort to enforce the settlement agreement. Moore testified that as of the first day of trial, the attorneys had spent approximately 45 hours in their efforts. Moore further testified that the attorneys were billing $200 an hour, which is a reasonable fee and customary for the quality of the attorneys who were working on the case. During deliberations, the jury sent the following note to the trial court, "Judge Pope, can we consider adding the hours the attorneys worked for today?"

Moore's testimony is sufficient to support a finding that the amount of attorneys' fees incurred up to the first day of trial was $9,000. In addition, the jury could make its own calculation regarding the additional hours incurred during trial, which lasted a day and a half, and multiply the number of hours they determined were spent by $200 to add to the $9,000. This is sufficient evidence to support the award of $11,000 in attorneys' fees.

■ The only testimony regarding appellate attorneys' fees was the testimony

**826**

of Cornelio Garza, who is not an attorney. Garza, who intended to appeal the summary judgment entered against him by the trial court, testified that he had spoken with several attorneys regarding appealing the ruling to a court of appeals and was told it would cost between $25,000 and $50,000. However, no expert testimony was introduced to prove the amount of attorneys' fees that would be reasonable and necessary in the event of unsuccessful appeal. Expert testimony is required to support an award of attorneys' fees. *Lesikar v. Rappeport*, 33 S.W.3d 282, 308 (Tex. App.-Texarkana 2000, pet. denied); *Woollett v. Matyastik*, 23 S.W.3d 48, 52 (Tex. App.-Austin 2000, pet. denied). "A court does not have authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without the benefit of evidence." *Woollett*, 23 S.W.3d at 53. Because there is no evidence in the record to support an award of attorneys' fees for an appeal, the award cannot be sustained. *Brown & Root U.S.A., Inc. v. Trevino,* 802 S.W.2d 13, 16 (Tex.App.-El Paso 1990, no writ).

Cantu's second issue is sustained in part.

### CONCLUSION

That portion of the trial court's judgment awarding $35,000 in attorneys' fees in the event of an unsuccessful appeal to the court of appeals and $50,000 in attorneys' fees in the event of an unsuccessful appeal to the Texas Supreme Court is reversed, and judgment is rendered that the appellees are not entitled to recover additional attorneys' fees for the appeal to this court or in the event of an appeal to the Texas Supreme Court. The remainder of the trial court's judgment is affirmed.