

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00522-CV

**IN THE MATTER OF THE ESTATE OF** Hugh Bob **SPILLER**

From the County Court, Menard County, Texas
Trial Court No. 2013-02059A
Honorable Joe Loving, Jr., Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Rebeca C. Martinez, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: June 5, 2019

DISMISSED

In this case, we consider as a threshold issue whether the parties entered into an enforceable agreement under Texas Rule of Civil Procedure 11 to waive the right to appeal from the trial court's final judgment. Because we conclude the parties' agreement is enforceable, we grant appellee's motion to dismiss this appeal.

## Background

After Hugh Bob Spiller died in 2013, his widow, appellee Mary Lee Spiller, filed an application to probate a will dated August 21, 2009 ("the 2009 will"). Hugh Bob's grandson, appellant Reagan Willman ("Willman"), filed an opposition to Mary Lee's application to probate the 2009 will, alleging lack of testamentary capacity and undue influence. Willman filed a competing application to probate a will dated November 8, 2006 ("the 2006 will").

At a pretrial hearing, the parties announced they had reached an agreement to settle the will contest, and Mary Lee's attorney read the terms of the settlement agreement into the record. The parties agreed, among other things: (1) the 2006 will would be admitted to probate, subject to the terms of the settlement agreement; (2) the parties released any and all claims that had been or could be asserted regarding Hugh Bob's estate; and (3) the parties waived their right to appeal the order admitting the 2006 will to probate. Mary Lee was sworn as a witness and testified she approved the settlement agreement. Willman's attorney stated he had "exhaustively discuss[ed] the proposals and settlement resulting today" with Willman and was "authorized to accept the settlement proposal." At the conclusion of the pretrial hearing, the trial court stated: "[T]he Court finds it's in the best interest of the estate of Hugh Bob Spiller that this settlement agreement . . . that the attorneys read is hereby approved, and the Court will sign an order—a judgment, rather, and admit the will to probate in accordance with the agreement."

Before the trial court signed a final judgment admitting the 2006 will to probate, Willman filed a motion to withdraw stating he did not agree to the terms of the settlement agreement. Mary Lee filed a motion to enter judgment on the settlement agreement. After a hearing, the trial court concluded it already had entered final judgment at the pretrial hearing, signed an "order perpetuating that judgment as rendered," and admitted the 2006 will to probate. Willman appealed, and a panel of this court held: "Because the trial court rendered the order admitting the 2006 will to probate and ordering the distribution of the estate in accordance with the family settlement agreement after Willman revoked his consent to the family settlement agreement, the trial court's order is void." *In re Matter of Estate of Spiller*, No. 04-15-00449-CV, 2016 WL 3557206, at *3 (Tex. App.—San Antonio June 29, 2016, no pet.) (mem. op.). This court vacated the trial court's order and remanded the cause to the trial court.

On remand, Mary Lee amended her pleadings to assert a claim against Willman for breach of the settlement agreement. The trial court severed the will contest from the breach of contract claim, and the parties proceeded to a jury trial on the will contest. According to Mary Lee's brief, the jury trial resulted in a verdict in Willman's favor. Mary Lee does not appeal the jury's verdict in the will contest case.

In the breach of contract case, the parties filed competing motions for summary judgment. After considering the motions on the papers, the trial court granted Mary Lee's motion for summary judgment, denied Willman's motion for summary judgment, and rendered final judgment admitting the 2006 will to probate subject to the terms of the settlement agreement. The final judgment expressly provides: "As part of the [settlement] agreement, Reagan Willman waived any right to appeal."

Willman filed this appeal, and Mary Lee filed a motion to dismiss the appeal based on the waiver provision in the settlement agreement. This court ordered the motion to dismiss would be carried with the case. In three issues, Willman argues: (1) the trial court erred in granting Mary Lee's motion for summary judgment; (2) the trial court erred in denying Willman's motion for summary judgment; and (3) Mary Lee's motion to dismiss must be denied.

**Discussion**

The threshold question we must answer is whether Willman waived the right to bring this appeal.

The right to appellate review may be waived by Rule 11 agreement. *Emerson v. Emerson*, 559 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Huber v. Huber*, No. 04-17-00326-CV, 2018 WL 1831655, at *4 (Tex. App.—San Antonio Apr. 18, 2018, pet. denied) (mem. op.). Willman does not appear to dispute that the settlement agreement contains a waiver of appellate rights. Instead, Willman asserts without elaboration: "Because the Final

Judgment was entered in error, the motion to dismiss must fail." We construe Willman's argument to be that the settlement agreement is not enforceable for the same reasons he argues the trial court erred in granting summary judgment that Willman breached the settlement agreement—*i.e.*, because: (1) Willman revoked his consent to the agreement before the trial court entered final judgment; (2) the settlement agreement lacks essential terms; (3) the settlement agreement violates the Statute of Frauds; and (4) consideration for the settlement agreement failed. We address each of these arguments separately.

## A.    Revocation of consent

Willman argues the settlement agreement is unenforceable because he revoked his consent to the agreement before the trial court entered final judgment. Willman, however, conflates the requirements for a valid agreed judgment with the requirements for a valid settlement agreement. As this court held in Willman's first appeal, a court may not render a valid *agreed* judgment absent consent at the time it is rendered. *In re Matter of Estate of Spiller*, 2016 WL 3557206, at *3. However, a court is not precluded, "after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement." *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995); *see also Juarez v. Laredo Inv. Props., Inc.*, No. 04-10-00821-CV, 2011 WL 4377999, at *3 (Tex. App.—San Antonio Sept. 21, 2011, no pet.) (mem. op.) (holding trial court may enforce settlement agreement in breach of contract action after one party withdraws consent). Therefore, the fact that Willman revoked his consent to the settlement agreement before the trial court entered final judgment does not render the settlement agreement unenforceable.

## B.    Essential terms

Willman argues the settlement agreement is not an enforceable contract, but rather a mere "agreement to agree" that is lacking essential terms.

### 1. Relevant law

The rules generally governing construction of contracts also apply to a Rule 11 agreement made in open court and entered of record. *Crews v. Dkasi Corp.*, 469 S.W.3d 194, 199 (Tex. App.—Dallas 2015, pet. denied); *see also Garza v. Villarreal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011, pet. denied). As in any other contract, the "essential" or "material" terms of a Rule 11 agreement must be definite, certain, and clear, or else the agreement is unenforceable. *Crews*, 469 S.W.3d at 199. Whether a contract is unenforceable for lack of essential terms is a question of law for the court. *Id.*; *see also Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied).

A Rule 11 agreement to settle litigation contains all essential or material terms if it provides for release of claims in exchange for payment of money or taking some other affirmative action. *See, e.g., Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 745 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (agreement to return shares of stock in exchange for payment of money and joint dismissal of lawsuit with prejudice contained essential terms); *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (agreement to pay $40,000 in exchange for settlement and release of all claims contained essential terms); *Cantu*, 90 S.W.3d at 825 (holding agreement to pay $150,000 in exchange for release of claims, although source of funds and terms of indemnity were unspecified, contained essential terms of settlement agreement); *see also Padilla*, 907 S.W.2d at 460–61 (noting material terms of Rule 11 settlement agreement include payment and release of claims).

### 2. Analysis

The parties agreed on the record in open court that the 2006 will would be admitted to probate subject to certain agreed terms and, in exchange, all parties to the will contest would release any and all claims that had been or could be asserted regarding Hugh Bob's estate.

Although Willman identifies certain "missing terms" regarding "the status of the executor," attorney's fees, and legal descriptions of properties, he does not explain how these terms are unaccounted for in the agreement or why they are essential to the agreement to resolve the will dispute. Because the settlement agreement resolved the underlying will dispute by designating a will to probate and agreed terms in exchange for a full release of claims related to the estate, we conclude the agreement contains all essential terms of a settlement agreement.

## C.       Statute of Frauds

Willman argues the settlement agreement is unenforceable because it violates the Statute of Frauds. Specifically, Willman argues the settlement agreement fails to sufficiently identify a particular parcel of real estate contained in Hugh Bob's estate, which the parties refer to as the "Pipeline Pasture." Mary Lee does not challenge the applicability of the Statute of Frauds to the settlement agreement, but instead argues the description of the Pipeline Pasture in the documents incorporated by reference in the settlement agreement satisfies the Statute of Frauds. Assuming without deciding the Statute of Frauds applies to the settlement agreement, we consider whether the agreement identifies the Pipeline Pasture with reasonable certainty.

### 1.  Relevant law

A contract subject to the Statute of Frauds is unenforceable unless it contains, or references another existing writing that contains, "the means or data by which the [property] to be conveyed may be identified with reasonable certainty." *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972). The description of real property need only be "reasonably certain" so as to enable a person familiar with the area to identify the property to the exclusion of all other properties. *Anderson Energy Corp. v. Dominion Okla. Tex. Exploration & Prod., Inc.*, 469 S.W.3d 280, 295 (Tex. App.—San Antonio 2015, no pet.) (citing *Gates v. Asher*, 280 S.W.2d 247, 248 (Tex. 1955)). "The property description must furnish enough information to locate the general area 'as in identifying

it by tract survey and county,' as well as to determine the 'size, shape, and boundaries' of the property." *Id.* (quoting *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). Whether a description is sufficient to satisfy the Statute of Frauds is a question of law for the court. *Id.*

### 2. Evidence in the record

The settlement agreement provides the terms by which the 2006 will shall be probated, including terms related to the disposition of the real property assets of Hugh Bob's estate. On the record in open court, the parties expressly agreed:

> . . . Reagan [Willman] shall have an option to purchase, exercisable on or before April 2, 2018, . . . the pipeline pasture for $400,000.

> . . . [I]n order to be absolutely certain as to the property descriptions and the references to the property which the parties know, in addition we will attach the ownership map which shows where the properties will go as additional legal description. And further, there was a notebook called the Spiller Ranch Ownership, which was prepared for prior mediation which has the legal descriptions of all of the estate property, including the ones we're talking about today, and those legal descriptions are incorporated into the family settlement agreement by reference.

> . . . [T]he estate has an appraisal that has legal descriptions of the property and those legal descriptions are also incorporated so that there is no question whatsoever that the property is sufficiently legally described in the family settlement agreement.

Mary Lee attached to her summary judgment motion a "Map of Spiller Ranch" and an "inventory and appraisal" of Hugh Bob's estate.[1] The inventory and appraisal identifies and provides legal descriptions of five parcels of separate real property in Menard and Kimble Counties.

---

[1] Mary Lee's summary judgment motion also purports to attach the "Spiller Ranch Ownership Notebook" as "Exhibit H," but the index to the clerk's record states Exhibit H is not in the clerk's possession and, therefore, was not made part of the record on appeal. Accordingly, we do not consider it. *See In re D.A.M.*, No. 04-13-00601-CV, 2013 WL 6546950, at *1 (Tex. App.—San Antonio Dec. 11, 2013, pet. denied) (mem. op.) ("This court is not permitted to consider matters outside the appellate record.").

Mary Lee also submitted the affidavit of Carr Benton "Ben" Thompson, a Registered Public Surveyor and Licensed State Land Surveyor, who states he "can locate and identify with reasonable certainty all of the Real Property referenced in the Transcript [in which the settlement agreement was read into the record] with reasonable certainty by referring to" the inventory and appraisal or by referring to maps or other public documents, including deed records, probate records, district court records, and tax records. Specifically, Thompson states:

> Both the Jack Wright Pasture [parcel 1] and Cow Pasture [parcel 2] are also identified by pasture name in the inventory. The remaining 250 acres, can be identified with reasonable certainty as the Pipeline Pasture, Parcels 3 and 4 of the Inventory. There are no other tracts that could be misconstrued as constituting the Pipeline Pasture.[2]

Parcels 3 and 4 are described in the inventory and appraisal as follows:

> Parcel #3
> LEGAL DESCRIPTION:
> PARCEL THREE: 125 acres of land, comprised of two tracts of land in Kimble and Menard Counties, Texas conveyed in a Warranty Deed from Hugh M. Spiller to Hugh Bob Spiller dated December 23, 1961, recorded in Volume 71, Page 566 of the Menard County Deed Records.
>
> First Tract: 35.8 acres of land, being the N.W. sub-division of Survey No. 11, Cert. No. 264, Abstract No. 83, Original Grantee, Brooks & Burleson, patented to B. Walker July 2, 1877, by Pat. No. 183, Volume 28; Said 35.8 acres lying North of the Shell Pump Station Road, and West of and adjacent to Hugh Spiller's 2000 acres East sub-division of R.H. Spiller ranch situated in Kimble County, Texas.
>
> Second Tract: 89.20 acres of land being the N.E. sub-division of Survey No. 13, Cert. No. 265, Abstract No. 84, Brooks & Burleson, patented to B.W. Browning July

---

[2] Parcel 5 is identified in the inventory as the "Railroad Trap."

2, 1877, by Patent No. 178, Volume 28.
Total Value: $193,750.00                                          $193,750.00

Parcel #4
LEGAL DESCRIPTION:

PARCEL FOUR: 125 acres of land, more or less, situated in Kimble County, Texas out of the North part B&B Survey No. 13, Certificate No. 265, Abstract No. 84, and being a part of that 236 1/10 acres tract out said survey acquired by Flora May Spiller Rieck as conveyed in a Warranty Deed from Norma Spiller to Hugh Bob Spiller dated February 27th, 1981, recorded in Volume 98, Page 362 of the Deed Records of Kimble County, Texas; and being the same land described in a Quitclaim Deed from Hugh Bob Spiller to Robert Roy Spiller, Jr. dated July 12, 1990, recorded in Volume 118, Page 713 of the Kimble County Deed Records; and being the same land described in a Quitclaim Deed from Robert Roy Spiller, Jr. to The Estate of Norma Spiller, Deceased, dated July 16, 1990, recorded in Volume 118, Page 752 of the Kimble County Deed Records.

Total Value: $193,750.00                                          $193,750.00

In her own affidavit, Mary Lee states: "There is a pipeline that runs through the ranch. Of all the Spiller Ranch, there is only one pasture that has a pipeline running through it, and [it] is known as the Pipeline Pasture."[3]

### 3. Analysis

The inventory and appraisal of Hugh Bob's estate, which was incorporated by reference in the settlement agreement, identifies the estate's real property assets by tract survey and county, as well as by separately describing the size, shape, and boundaries of each parcel. *See Anderson Energy Corp.*, 469 S.W.3d at 295. Although the inventory and appraisal does not specifically designate a "Pipeline Pasture," Mary Lee's and Ben Thompson's affidavits demonstrate that a

---

[3] Willman objected to Mary Lee's and Ben Thompson's affidavits, but the trial court did not explicitly rule on those objections. Where the record does not reflect that the trial court ruled or refused to rule on objections to summary judgment evidence, we may not infer a ruling based solely on the trial court's summary judgment decision. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018). By failing to obtain an express or implied ruling on his objections to the summary judgment evidence, Willman waived the objections. *See* TEX. R. APP. P. 33.1(a); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317–18 (Tex. App.—San Antonio 2000, no pet.).

person familiar with the area could locate the Pipeline Pasture with reasonable certainty. *See id.* at 299 (citation omitted) (noting courts may consider extrinsic evidence, including expert affidavit testimony, to determine whether a person familiar with the area could locate the property with reasonable certainty); *see also Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 803–04 (Tex. App.—San Antonio 2014, pet. denied) (holding easement did not violate statute of frauds based on surveyor's testimony that he could locate the easement with reasonable certainty using aerial photographs); *Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194 (Tex. App.—Tyler 2004, pet. denied) (holding description of property sufficient where surveyor testified he could locate property with reasonable certainty); *W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 266 (Tex. App.—Austin 2002, no pet.) (holding description sufficient to locate easement with reasonable certainty where evidence included affidavit testimony of surveyor concluding description was sufficient, even though second surveyor reached opposite conclusion).

We conclude as a matter of law that the documents incorporated by reference into the settlement agreement sufficiently describe the real property assets of Hugh Bob's estate such that a person familiar with the area could locate the Pipeline Pasture with reasonable certainty. Accordingly, the settlement agreement does not violate the Statute of Frauds.

**D.    Failure of consideration**

Willman argues the settlement agreement is unenforceable for failure of consideration because Mary Lee elected to proceed to a jury trial on the will contest. "[A] failure of consideration occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.). Importantly, however, "[i]t is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or

excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam).

In this case, Willman revoked his consent to the settlement agreement long before Mary Lee agreed to proceed to trial on the merits of the will contest. Even assuming Mary Lee's actions constitute a failure of consideration, such failure is immaterial in light of the fact that Mary Lee was excused from further performance after Willman refused to perform under the settlement agreement. Therefore, the settlement agreement is not unenforceable for failure of consideration.

**E.      Conclusion**

Because we conclude each of Willman's arguments regarding enforceability of the settlement agreement lacks merit, we hold the settlement agreement, including the waiver of appellate rights, is enforceable. We need not reach the merits of Willman's first and second issues; instead, we grant Mary Lee's motion to dismiss this appeal based on waiver.

**Conclusion**

Because the parties entered into an enforceable Rule 11 agreement waiving their right to appellate review of the final judgment, we grant Mary Lee's motion to dismiss this appeal.

Rebeca C. Martinez, Justice