**Opinion filed January 30, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-23-00213-CV

_____

## HANNAH SPRAGUE AND DELMAS MEEK, Appellants

## V.

## ERWIN J. ROBERTS AND JULIE ROBERTS, Appellees

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CV36531**

### M E M O R A N D U M   O P I N I O N

This appeal concerns a dispute over an attorney's fee award. Appellants, Hannah Sprague and Delmas Meek, originally brought suit against Appellees, Erwin J. Roberts and Julie Roberts, for claims arising from Appellants' purchase of real property located in Erath County. Following a five-day jury trial, the jury found for Appellees and awarded them $60,000 in attorney's fees. Thereafter, the trial

court signed its judgment, which ordered that Appellants were jointly and severally liable for the attorney's fee award.

In three issues, Appellants argue that there is insufficient evidence to support the attorney's fee award, and that the trial court erred when it rendered judgment awarding attorney's fees to Appellees that were incurred after Appellant Meek nonsuited his claims, and without requiring a segregation of those fees. We affirm.

## I. *Factual Background*

On June 30, 2020, Appellants executed a contract to purchase real property in Erath County from Appellees. On October 22, 2020, Appellants filed suit against Appellees—and other entities who are not parties to this appeal—for multiple claims arising from the June 30 real estate transaction.[1] The parties filed multiple pleadings, pretrial motions, and other documents, including two motions for summary judgment filed by Appellees on February 11, 2022, and February 10, 2023, respectively. On April 3, 2023, over two years after the suit was filed, Meek nonsuited his claims against Appellees without prejudice. The matter then proceeded to a jury trial on May 8, 2023.

Mackenzie Pack, the trial attorney for Appellees, testified at trial regarding reasonable and necessary fees incurred by her for her legal representation of them.[2] Pack testified that she was familiar with the reasonable hourly rate for attorneys in Erath County and surrounding areas. Pack also stated that her hourly billing rate was $185 when she was retained by Appellees in October 2020, and she stated that her hourly billing rate increased to $200 approximately six months later. Pack testified that she was licensed and began practicing law in the State of Texas approximately two years before she began representing Appellees. Pack was

---

[1]The other defendants were dismissed with prejudice on March 14, 2022.

[2]We note that prior to trial, Mackenzie Pack changed her name from Mackenzie Welch. We will refer to her as Mackenzie Pack in this opinion.

directly involved in all legal services that were related to defending Appellees in this suit, and she testified that while she performed most of the work in the case, other attorneys assisted her at trial. Pack also testified about some of the tasks that she completed for Appellees during her legal representation of them, such as drafting pleadings and discovery, drafting motions for summary judgment, performing legal research, attending depositions, and preparing exhibits for trial.

At trial, Pack was asked by her co-counsel whether she believed that "between [$]60,000 and [$]75,000 [was] a reasonable fee for legal services provided in this matter through the conclusion of jury trial?" Appellants' trial counsel, Julian Nacol, objected before Pack answered the question and stated that the billing invoices and "the projections [for attorney's fees]" that counsel for Appellees sent to him, was "up to" $52,000. Without ruling on the objection, the trial court instructed Nacol to "cover that on cross." Pack then testified that, in her opinion, and in addition to the attorney's fees incurred through the conclusion of trial, she considered the following contingent fees for legal services to be reasonable: (1) $20,000 for appeals to the Eastland Court of Appeals; (2) $7,500 for drafting and filing a petition for review in the Texas Supreme Court; (3) $7,500 for drafting and filing a brief on the merits in the Texas Supreme Court; and (4) $3,500 for presenting oral argument in the Texas Supreme Court.

Additionally, an invoice that detailed Pack's billings for her representation of Appellees was admitted into evidence. The invoice—which comprised both services and expenses for the case—included the rates charged and the hours expended on the case by each attorney, and descriptions of the work that they performed. As of May 2, 2023, the total amount of attorney's fees billed to Appellees was $49,820.50, and the total amount of expenses charged was $3,143.13. Pack testified that she believed that her billing rate was reasonable and necessary, and that the billing

records admitted into evidence did not contain any duplicative, unnecessary, or unproductive time.

On cross-examination, Nacol asked Pack if her "firm normally allow[ed] [her] to do up to $60,000 of work without being paid?" Pack responded that she normally does not bill her clients until the case has concluded, and she stated that she created the invoice for attorney's fees on May 4, 2023, using a billing software program. Nacol then questioned Pack concerning the reasonableness of the fees incurred for the two motions for summary judgment that she prepared and filed. Pack stated that the fees incurred were reasonable and necessary and that the work that she did "in connection with these summary judgments [was] necessary to defend the claims that Plaintiff has alleged in this matter."

Regarding the segregation of fees, Nacol asked Pack if various billing statements—including billing statements that described depositions taken at Pack's office, her preparation for deposing Appellants, and various correspondence to all parties—were segregated. In response, Pack stated, "I'm not required to segregation [sic] like you are, Mr. Nacol." Nacol further questioned Pack regarding the segregation of fees in her billing records:

> [NACOL]: Are these segregated from the parties or are they not? Not trying to trick you.
>
> [PACK]: Well, I'm not -- I mean, these would have come from -- I believe, these came from discovery from your client actually.
>
> [NACOL]: Is it hard because you just made this up a month ago?
>
> [PACK]: No.
>
> [NACOL]: You don't really know what this is?
>
> [PACK]: That's not correct, because I just reviewed right here and it says [September 21] of 2021, review text about realtors responsible. And that came from your client and was discovery related to your client.

[NACOL]:  So, holistically, in all this -- is any of this segregated or not for all the different parties?

[PACK]:  The parties that have been dismissed?

[NACOL]:  Yeah.  I'm just wondering if it's segregated?

[PACK]:  No, there's time in there for those parties.

[NACOL]:  So it has been?

[PACK]:  Has been what?

[NACOL]:  Segregated?

[PACK]:  No, I just told you that there's time in there for those other parties.

[NACOL]:  Okay.  So it's not segregated because it's all together?

[PACK]:  Because I'm not required to, that's correct.

[NACOL]:  Okay.  So it's not segregated?

[PACK]:  That's correct.

Following this exchange, Pack was questioned concerning a specific billing statement—dated February 8, 2023—where she appeared to have billed thirty-five hours in a single day for drafting and finalizing Appellees' second motion for summary judgment.  Pack testified that the thirty-five hours that she billed as shown by the invoice was for the total number of hours that she incurred for preparing the second motion for summary judgment over a two-week period.  Pack also stated that the billing invoice, which recited the specific hours for legal services that she provided in this case, did not show any of the time that she had spent working on this case for Appellees for the previous two-weeks; these "missing" hours included (1) time for trial preparation during the week before trial, and (2) legal services that she provided to Appellees during the trial of the case.

After the parties closed, the trial court discussed the proposed charge with trial counsel off the record. The trial court then held a formal charge conference. The charge submitted to the jury included questions for an award of attorney's fees to Appellees that were conditioned on the jury's finding that Appellees were not liable to Appellants for their breach-of-contract claim. At the charge conference, Sprague's trial counsel only raised an objection to the proposed attorney's fee instruction on the basis that "there's no affirmative relief on file[,] that there was no pleadings to support this submission[,] and by the evidence submitted, [Appellees] cannot be a prevailing party." The trial court overruled Sprague's objection.

On May 17, 2023, the jury rendered its verdict and found that Appellees were not liable for Appellants' breach-of-contract claim. In its verdict, the jury also awarded Appellees attorney's fees in the following amounts: (1) $60,000 for the representation that Appellees' trial counsel provided at the trial court level; (2) $20,000 for appeals to the court of appeals; (3) $7,500 for representation at the petition-for-review stage in the Texas Supreme Court; (4) $7,500 for representation at the briefing stage in the Texas Supreme Court; and (5) $3,000 for representation through oral argument and the completion of any proceedings in the Texas Supreme Court. On June 21, the trial court signed its final judgment, which awarded attorney's fees to Appellees in the amounts recommended by the jury. Additionally, the final judgment ordered that Appellants were jointly and severally liable for the jury's $60,000 attorney's fee award. On July 14, Sprague filed a motion for new trial, which the trial court denied on August 16. This appeal followed.

## II. *Standard of Review*

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal

principles in reaching its ruling, or if its ruling is not supported by legally or factually sufficient evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). When reviewing a trial court's award of attorney's fees, we must ensure that the record contains sufficient evidence to support such an award. *Hizar v. Heflin*, 672 S.W.3d 774, 799 (Tex. App.—Dallas 2023, pet. denied) (citing *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 505 (Tex. 2019)).

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture*, 578 S.W.3d at 489; *Deboer v. Attebury Grain, LLC*, 684 S.W.3d 520, 533 (Tex. App.—Eastland 2024, no pet.). Whether the fees requested by a prevailing party are reasonable and necessary are questions of fact. *Rohrmoos*, 578 S.W.3d at 498. In this regard, the lodestar method sets forth a two-step standard for the factfinder to utilize so that it may ascertain what constitutes reasonable and necessary attorney's fees. *Id.*

First, the factfinder must determine the number of reasonable hours that counsel worked on the case; those hours are then multiplied by the reasonable hourly rate for counsel's services. *Id.*; *El Apple I*, 370 S.W.3d at 760. At a minimum, the fee claimant's proof of reasonable hours should include "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498. This lodestar calculation approximates "the reasonable value of legal services provided" and, when supported by sufficient evidence, is presumed to reflect "the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 498–99.

Second, because other considerations may justify either an enhancement or a reduction to the lodestar figure, the factfinder must determine "whether evidence of those considerations overcomes the presumption and necessitates an adjustment to reach a reasonable fee." *Id.* at 501. This determination allows for the enhancement or the reduction of the lodestar figure "when considerations not already accounted for in the first step" establish that the lodestar figure represents either an unreasonably low or an unreasonably high fee award. *Id.* at 502. "[C]onsiderations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* at 501 (noting that *Arthur Andersen* lists the factors "that may justify an adjustment" provided they are noncumulative of the base-*lodestar* considerations) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

"General, conclusory testimony [that is] devoid of any real substance will not support a fee award." *Id.* Generalities about tasks that were performed provide insufficient information for the factfinder to meaningfully review whether the tasks performed by counsel and the hours incurred were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, there must be some evidence to inform the factfinder of the amount of time that counsel dedicated to specific tasks so that it may meaningfully review the amount of fees requested. *Rohrmoos*, 578 S.W.3d at 502; *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam); *DeBoer*, 684 S.W.3d at 533.

Additionally, the issue of segregation of fees, and whether the claims are so intertwined that they cannot be separated, is a mixed question of law and fact that

we review de novo. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–14 (Tex. 2006).

## III. *Analysis*

### A. *Sufficiency of the Evidence*

In their first issue, Appellants argue that the evidence adduced at trial was legally insufficient to support the jury's award of attorney's fees incurred by Appellees' trial counsel—$60,000—because there is no evidence that Appellees' requested attorney's fees were reasonable and necessary. Specifically, Appellants argue there is no evidence that either (1) the total number of hours worked by Appellees' counsel to support the attorney's fee award were reasonable and necessary; or (2) the total amount of attorney's fees awarded by the jury were reasonable and necessary. Alternatively, Appellants argue that there is insufficient evidence to support the jury's award of attorney's fees and expenses that exceed the $52,963.63 amount listed in the billing invoice presented by Appellees at trial.[3]

If a claim for breach of contract is asserted, a trial court may award reasonable attorney's fees to the prevailing party. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b) (West Supp. 2024). In this case, Appellees pled in their amended answer that they were contractually entitled to recover attorney's fees from Appellants pursuant to the provision in the parties' contract which specifically states: "A . . .

---

[3]Additionally, Appellants argue that they filed a judgment notwithstanding the verdict prior to the trial court signing its judgment, and that this prejudgment filing should allow for the trial court's judgment to be modified to show a zero attorney's fee award if we conclude that there is insufficient evidence to support the amount of attorney's fees awarded by the jury. *See Cannon v. Castillo*, No. 11-12-00256-CV, 2014 WL 3882190, at *4 (Tex. App.—Eastland Aug. 7, 2014, no pet.) (mem. op.). However, because we conclude that there is sufficient evidence to support the jury's attorney's fee verdict—and because we conclude that Appellants did not preserve the issue of segregation for appellate review—we do not address Appellants' argument as to whether their prejudgment filing, titled "Plaintiff's Objections to Defendants' Judgment and in Alternative Request of Entry for Plaintiff's Judgement," was effectively a judgment notwithstanding the verdict and should allow for a rendition of zero attorney's fees.

9

Seller, who prevails in any legal proceeding related to the contract is entitled to recover reasonable attorney's fees and all costs of such proceeding."

As an initial matter, under Rule 162 of the Texas Rules of Civil Procedure, a plaintiff may take a nonsuit at any time before introducing all of their evidence; a nonsuit under this section does not require that an order signed by the trial court to be effective. *See Rogers v. Bagley*, 623 S.W.3d 343, 357 (Tex. 2021); *Aaron v. Fisher*, 645 S.W.3d 299, 310 (Tex. App.—Eastland 2022, no pet.). A nonsuit extinguishes a case or controversy from "the moment it is filed . . . with the clerk of the [trial] court." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (quoting *Shadowbrook Apartments v. Abu-Ahmad*, 783 S.W.2d 210, 211 (Tex. 1990)). However, a plaintiff's nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief." TEX. R. CIV. P. 162; *see also Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011); *Univ. of Tex. Med. Branch at Galveston*, 195 S.W.3d at 100; *Aaron*, 645 S.W.3d at 310. A claim for affirmative relief "must allege a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or [obtain] relief, even if the plaintiff abandons or is unable to establish his cause of action." *Univ. of Tex. Med. Branch at Galveston*, 195 S.W.3d at 101 (citing *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990)). Here, Appellees had a pending claim for affirmative relief against Meek—the recovery of attorney's fees—which they were permitted to recover under Rule 162. *See Villafani v. Trejo*, 251 S.W.3d 466, 468–69 (Tex. 2008) ("A nonsuit under Rule 162 also has 'no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal.'" (quoting TEX. R. CIV. P. 162)).

Appellants argue that because Pack did not testify regarding the total amount of reasonable attorney's fees incurred at trial, there is legally insufficient evidence

to support the jury's attorney's fee award because either "the record discloses a complete absence of evidence of a vital fact" or "the evidence offered to prove a vital fact is no more than a mere scintilla." *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 640 (Tex. 2023) (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018)). Additionally, Appellants argue that the admitted invoices "[do] not state—or otherwise show—that the amounts thereon were reasonable and/or necessary." On this record, we conclude that the evidence supports the jury's attorney's fee award, including the additional $7,036.37 that the jury awarded in excess of the $52,963.63 identified in Pack's billing statement.

Here, Appellees presented sufficient evidence to address the minimum requirements of *Rohrmoos* to support the jury's award. 578 S.W.3d at 498. Pack testified that she was directly involved in all aspects of the case and that she performed most of the legal services for which she billed Appellees. She testified that she was familiar with the reasonable hourly rate charged for attorneys in the prevailing area, and that the rate she charged Appellees for her services—$185 to $200 per hour—was a reasonable rate. Further, Pack testified that it was necessary for her to forgo working on other cases in order to devote the time that was required to prepare Appellees' case for trial.

Pack testified to some of the particular services that she performed in her representation of Appellees in this case, such as drafting pleadings and discovery, drafting motions for summary judgment, performing legal research, preparing for and attending depositions, and preparing trial exhibits. The specific services and tasks that Pack performed were described in her billing statements, which corresponded to the dates that she performed legal services for Appellees in the case. While Pack's testimony could arguably be characterized as "general" on some points, because it was not sufficiently detailed with regards to certain services that

11

she performed, her testimony coupled with the admitted billing records provided the type of detailed information that *Rohrmoos* requires to support an attorney's fee award. *See Starry Skies Ranch, L.P. v. Chappell Hill Constr., Co.*, No. 01-22-00760-CV, 2024 WL 4628408, at *24–25 (Tex. App.—Houston [1st Dist.] Oct. 31, 2024, no pet. h.) (mem. op.) (discussing *Rohrmoos*, 578 S.W.3d at 506). Moreover, while Pack did not expressly state that the total number of hours that she dedicated to Appellees' case were "reasonable and necessary," she did testify that her involvement in pretrial discovery, trial preparation, the summary judgments she prepared and filed, and "the work done in connection with these summary judgments [was] necessary to defend the claims that Plaintiff has alleged in this matter."

In addition to the information described in the billing statements, Pack clarified the discrepancies where she "appeared" to have worked on the case for thirty-five hours in a single day. In clarifying the hours worked and the dates that she completed the described services, Pack stated that the billing statements indicated the total number of hours that she billed for specific dates within a two-week period; the total hours were then recorded in the billing system as a lump sum of the total hours worked upon competition of the specified legal service or task. According to Pack, her billing records did not include any duplicative, unnecessary, or unproductive time.

The billing statements show that the cumulative legal services that Pack billed Appellees totaled $49,820.50, which was calculated by multiplying the hours that she expended on a specific task by her hourly rate of $185. The expenses incurred by Pack totaled $3,143.13, which includes a mediation fee payment, multiple fees for deposition reporting services, and trial supplies. Pack did concede that her billing statements did not describe any time that she spent working on this case for legal services that she provided either (1) the week prior to trial or (2) during the trial of

12

the case. Nevertheless, from the jury's observations of Pack's representation of Appellees during the five-day jury trial, the jury could have reasonably calculated and accounted for the value of Pack's legal services during trial in determining their attorney's fee award. *See Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied) ("[T]he jury could make its own calculation regarding the additional hours incurred during trial, which lasted a day and a half, and multiply the number of hours they determined were spent [in attorneys' fees incurred at trial].").

In this case, the jury's attorney's fee award can be ascertained by simple math. The jury could have reasonably concluded that Pack worked at least forty hours during the five-day trial, and then multiplied these hours by her $185 hourly rate, which amounts to an additional $7,400 in attorney's fees for her representation of Appellees during the trial. When this amount is added to the services and expenses listed in the admitted billing records, Pack's incurred attorney's fees and expenses would total $60,363.63.[4] *See id.* Furthermore, the factfinder "may . . . adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case." *Rohrmoos*, 578 S.W.3d at 494 (quoting *El Apple I*, 370 S.W.3d at 760 (citations omitted)).

Thus, giving due deference to the jury's factfinding role, and based on the record before us, we conclude that the jury's award of attorney's fee and expenses to Appellees is supported by legally and factually sufficient evidence. Accordingly, we overrule Appellants' first issue.

---

[4]We note that there are multiple invoices in the billing records that include a billing rate that exceeds the $185 billing rate that Pack testified to at trial. However, because the jury could have multiplied the total number of hours that Pack billed at the $185 billing rate to account for the incurred fees, which are essentially equal to the jury's $60,000 attorney's fee award, we conclude that the award is supported by legally and factually sufficient evidence.

B.  *Segregation of Attorney's Fees*

In their second and third issues, Appellants argue that the trial court erred when it rendered judgment for and awarded attorney's fees to Appellees without requiring Appellees to segregate the attorney's fees they incurred for the claims that Appellants asserted against each Appellee independently, because (1) Appellees failed to satisfy their burden to prove that segregation was not required; and (2) there is no evidence that the attorney's fees that Appellees incurred after Meek nonsuited his claims were so intertwined with Sprague's claims so as to make segregation impossible.[5]

Generally, a claimant seeking attorney's fees must (1) segregate the fees that are recoverable from those that are not, and (2) segregate the fees that are owed by different parties.  *See Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (citing *Chapa*, 212 S.W.3d at 314); *DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 906 (Tex. App.—Dallas 2010, no pet.); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991).  However, an exception to the general rule for segregation exists where the disputed fees arise from claims that are based on the same transaction and are so intertwined as to make segregation impossible. *See Kinsel*, 526 S.W.3d at 427.  "Intertwined facts do not make . . . fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."  *Chapa*, 212 S.W.3d 299, 313–14 (modifying the holding in *Stewart Title Guar. Co.*, 822 S.W.2d 1).  The party seeking attorney's fees has the burden to prove that the requested fees

_____

[5]In a footnote in their brief, Appellants highlight that Pack's billing invoices include unsegregated time that is specifically related to other parties who were dismissed from the suit.  However, for the reasons discussed below, the issue of fee segregation as to previously dismissed parties was also waived because Appellants did not object to the issue of segregation at the charge conference.  *See* TEX. R. CIV. P. 272; *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389–90 (Tex. 1997); *Westheimer v. Ziemer*, No. 01-22-00967-CV, 2024 WL 3349096, at *3 (Tex. App.—Houston [1st Dist.] July 9, 2024, no pet.).

have been properly segregated or that segregation is not required. *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 872 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

Further, when, as in this case, the issue of attorney's fees is submitted to a jury, the jury shall determine and resolve both the amount of attorney's fees to be awarded and the segregation issue. *Westheimer*, 2024 WL 3349096, at *2 (citing *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 801 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). While a party's failure to segregate attorney's fees in a case that contains multiple causes of action may result in a "zero" attorney's fee finding, the alleged failure of a party to segregate the fees can be waived if an adverse party fails to object that the attorney's fees in dispute are not properly segregated as to specific claims. *See Solis*, 951 S.W.2d at 389; *Hizar v. Heflin*, 672 S.W.3d 774, 802 (Tex. App.—Dallas 2023, pet. denied).

To preserve a complaint for appellate review, Rule 33.1 of the Texas Rules of Appellate Procedure requires that the complaint be raised and presented to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). When the complaint concerns alleged charge error, "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds [for] the objection." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007) (quoting TEX. R. CIV. P. 274). Whether a charge error complaint is preserved typically depends on whether the complaining party brought its complaint to the trial court's attention, timely and plainly, and in turn obtained a ruling. *Id.* Rule 278 of the Texas Rules of Civil Procedure states that,

> [a] judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the

judgment; provided however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party.

TEX. R. CIV. P. 278.   "When the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable."

*Id.* R. 274.   On preserving charge error, the Supreme Court of Texas has stated:

> [t]rial courts lack the time and the means to scour every word, phrase, and omission in a charge that is created in the heat of trial in a compressed period of time.   A proposed charge, whether drafted by a party or by the [trial] court, may misalign the parties; misstate the burden of proof; leave out essential elements; or omit a defense, cause of action, or (as here) a line for attorney's fees.   Our procedural rules require the lawyers to tell the [trial] court about such errors before the charge is formally submitted to a jury.   TEX. R. CIV. P. 272.   Failing to do so squanders judicial resources, decreases the accuracy of trial court judgments and wastes time the judge, jurors, lawyers, and parties have devoted to the case.

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829–30 (Tex. 2012) (concluding that a party's pretrial proposed charge was insufficient to preserve the party's appellate complaint of omitted questions).

Therefore, to properly preserve charge error, an appellant must either present their charge objections to the trial court in writing or recite the objections on the record to the court reporter in the presence of the trial court and opposing counsel before the charge is read to the jury.   TEX. R. CIV. P. 272.   However, if a party only raises an objection to the issue of segregation as it was submitted in the charge for the first time in a motion for new trial, the complained-of charge error is not properly preserved.   *See C.M. Asfahl Agency*, 135 S.W.3d at 801 (rejecting an appellant's contention that error was preserved through their motion for new trial because the

16

appellant did not object to the issue of segregation in the attorney's fees question as submitted in the charge).

Moreover, when a party waives the issue of fee segregation through their failure to object to submitted broad-form attorney's fee questions, the trial court may only disregard the jury's finding if it is not supported by the evidence or the finding is immaterial. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 505 (Tex. 2018) (citing *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)); *see Solis*, 951 S.W.2d at 389–90. A defective question in the charge does not render a jury's answer immaterial; rather, a jury's answer is immaterial when the question "should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings." *See Menchaca*, 545 S.W.3d at 506 (quoting *Spencer*, 876 S.W.2d at 157).

The trial court submitted a broad-form attorney's fee question, which read: "What is a reasonable fee for the necessary services of Julie Roberts and Erwin Roberts attorney, stated in dollars and cents?" This question, however, did not provide additional instructions or alternative answers for the jury to determine and award discrete categories of fees, such as fees incurred with respect to a specific claim, defendant, or previously dismissed party. *See Westheimer*, 2024 WL 3349096, at *3. Here, Appellants did not object to the form or submission of this question. Therefore, Appellants failed to preserve their segregation complaint for our review. *See* TEX. R. APP. P. 33.1(a)(1); TEX. R. CIV. P. 272; *C.M. Asfahl Agency*, 135 S.W.3d at 801; *see also Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988). As such, Appellants waived their challenge to the attorney's fees awarded in the trial court's judgment with respect to their segregation complaint. *See Solis*, 951 S.W.2d at 389–90; *Westheimer*, 2024 WL 3349096, at *3; *C.M. Asfahl Agency*, 135 S.W.3d at 801.

Similarly, Appellants failed to preserve their complaint that the trial court erred when it ordered that they were jointly and severally liable for Appellees' attorney's fee award because this complaint was not raised in the trial court below. *See* TEX. R. APP. P. 33.1; *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 181 (Tex. App.—El Paso 2014, pet. denied) ("The record reveals [a]ppellants did not object either to the judgment which held appellants jointly and severally liable nor was it raised in their motion for new trial."); *Circle F Invs., LP v. New Braunfels Stewardship Properties, LLC*, No. 03-22-00696-CV, 2024 WL 4594124, at *3 (Tex. App.—Austin Oct. 29, 2024, no pet. h.) (mem. op.). Accordingly, we overrule Appellant's second and third issues on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

January 30, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.